THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
IDA MAE WILLIAMS, Defendant-Appellant.

Third District   No. 79-430

Opinion filed October 24, 1980.

John H. Reid and E. William Hutton, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin, Martin N. Ashley, and Christopher S. Carrol, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Following a jury trial, defendant Ida Mae Williams was convicted of unlawful delivery of a controlled substance, heroin, and was sentenced to a 3-year term of imprisonment. Defendant appeals, contending that her sentence is excessive.

At trial Teresa Morris, a special agent of the Department of Law Enforcement, testified for the State that on September 6, 1978, she and Special Agent James Williams drove to 815 Brotherson Street in Peoria. Morris approached a window of apartment 323 and knocked on it. When

defendant pulled back the shade, Morris asked for Ernest Washington or "Toolum," who then came to the window. Morris asked him what was available, and Washington replied, "Fifties," a slang term for $50 packets of heroin. After Morris passed $50 through a hole in the screen, Washington left the window. Defendant then returned to the window and passed Morris a tinfoil packet which was later determined to contain 0.3 grams of a substance containing heroin.

On cross-examination Morris testified that she went to this particular apartment to buy drugs because she had been advised by a confidential informant that Washington had narcotics for sale, and because she had bought drugs there twice before on August 24 and 31, 1978. Morris first met defendant at the apartment on August 31 when defendant was the only person there. On redirect examination Morris testified without objection that she bought a "fifty" from defendant on August 31 and a $200 packet from Washington on August 24.

Defendant testified that she lived at the apartment in question. She was home on September 6 but was not contacted by anyone and did not hand a packet containing heroin to Morris. Defendant said she first met Morris in late July or early August of 1978 when Morris sold her a fur coat outside the apartment. On August 6, Morris and Jimmy Williams (not Special Agent James Williams) came to the apartment. Williams put heroin on the table, and Morris injected it into her own arm. Defendant next saw Morris on August 31 when Morris came to the apartment, asked for Washington, and then asked for "works." Washington was not present, and defendant did not sell Morris any drugs.

In rebuttal, Morris denied that she ever injected drugs or simulated doing so.

Following defendant's conviction, a presentence report was prepared which indicated defendant was 24 years old at the time of the offense. She had previously been convicted of aggravated battery and the traffic offense of driving while license suspended and fleeing a police officer. She was on probation for those three offenses when she committed the instant crime.

Defendant had been divorced since 1975 and had one child, a daughter who was 7 years old at the time of sentencing. From August of 1975 to December of 1976, she worked as a clerk at St. Francis Hospital. She was fired because of chronic absenteeism and tardiness. She was unemployed until February of 1979, after she was charged with the instant offense, when she obtained employment as a secretary with the Peoria Housing Authority.

At the sentencing hearing the State offered no evidence in aggravation. For the defense, Mary Singleton, defendant's friend, testified about defendant's unhappy marriage. Defendant testified that her absenteeism

and tardiness which led to her dismissal at St. Francis Hospital were caused by her marital difficulties. She said that she provided the sole support for her daughter who resided with her and that she did not know anyone who could take care of her daughter if she was sentenced to prison. Defendant stated that her boss at the Peoria Housing Authority told her she could have her job back if she was granted probation. Finally, defendant testified that she had been attending church regularly and intended to become a "worthwhile citizen." The presentence report indicates that defendant's father, stepmother, and friend believed she was really trying to turn her life around.

Defendant argues that the trial court erred in denying her probation because it failed to consider or to accord proper weight to the following factors in mitigation:

"(10) the defendant is particularly likely to comply with the terms of a period of probation;

(11) the imprisonment of the defendant would entail excessive hardship to his dependents." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1.)

We disagree.

At the outset we note that the offense of which defendant was convicted was a Class 2 felony. (Ill. Rev. Stat., 1978 Supp., ch. 56½, pars. 1401(b) and 1204(c)(12); Ill. Rev. Stat. 1977, ch. 56½, par. 1102(aa)(1).) In the absence of factors justifying an extended term, a sentence of imprisonment for such a felony shall be a determinate term of between 3 and 7 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1.) A sentence of probation would have been a permissible disposition. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 105—5—3.) Section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)) provides:

"Except where specifically prohibited by * * * this Code, the court shall impose a sentence of probation of conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

(2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

In pronouncing sentence in the instant case, the trial judge expressly found both factors listed in the above statute.

■■ The Unified Code of Corrections provides that upon appeal from a sentence, there is a rebuttable presumption that the sentence imposed by the trial judge was proper. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1.)

With respect to whether defendant is particularly likely to comply with the terms of a period of probation, we believe the clearest indication of that likelihood is that she committed the instant offense while on probation for aggravated battery, driving while license suspended and fleeing a police officer. That she obtained employment and has been attending church since she was charged with the instant offense is less significant. This court has viewed abrupt character improvement following indictment with skepticism. *People v. Wilson* (1980), 87 Ill. App. 3d 544, 408 N.E.2d 1209.

With respect to whether imprisonment would entail excessive hardship to defendant's daughter, we believe the trial court clearly considered this factor in determining the proper sentence. Although he did not mention it when pronouncing sentence, he heard defendant's testimony about her daughter, and defense counsel raised the point in his argument on sentencing alternatives. We know of no requirement that the judge recite each fact presented in evidence at the sentencing hearing.

■■ The trial judge did mention the following aggravating factors: that unlawful delivery of heroin causes serious harm, the need for deterrence, and defendant's history of prior criminal activity. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.) With respect to the latter factor, we note that, in addition to defendant's three prior convictions, evidence at trial indicated that the instant offense was not her first unlawful sale of heroin. In light of these factors in aggravation, defendant's argument that the trial court failed to accord proper weight to the hardship to her daughter is without merit. She has failed to overcome the rebuttable presumption of the propriety of her sentence.

For the reasons stated above, the conviction and sentence entered by the Circuit Court of Peoria County are affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.