THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK WILSON, Defendant-Appellant.

Third District    Nos. 79-805, 79-898 cons.

Opinion filed August 25, 1980.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On December 6, 1978, defendant Mark Wilson was charged in a five-count indictment with five separate burglaries occurring in the fall of 1978. The public defender was then appointed to represent defendant, and a plea of not guilty was entered. The State elected to proceed on count III of the indictment first. Sometime prior to January 5, 1979, defendant retained attorney Mark Rose to represent him. On that date defendant filed a motion for substitution of judge. The motion was granted, and the case was assigned to Judge Samuel Harrod III of the Eleventh Judicial Circuit,

who was sitting in the Tenth Judicial Circuit on special assignment. On May 22, 1979, an order was entered setting the jury trial on June 27, 1979. The order required that all pretrial motions be filed on or before June 14, 1979, the date of the final pretrial hearing.

On Wednesday, June 27, 1979, the date set for jury trial, the case was called, and the trial court stated he had been advised that defendant desired to enter a guilty plea. Defendant, however, moved for a continuance so that Rose could withdraw from the case and attorney Dick Williams could enter his appearance. Rose acknowledged that the motion had not been filed by June 14, 1979, as required by the pretrial order. He informed the court that he was not aware of defendant's desire to substitute counsel until the beginning of that week. Rose stated he had spoken to Williams, who indicated he was willing to represent defendant. According to Rose, Williams was out of town on that date. Judge Harrod, noting that he was sitting in Tazewell County on special assignment and that the case had been set for jury trial for quite some time, denied the motion.

Defendant then entered a blind plea of guilty to count III. As a factual basis for the plea, the prosecutor stated that defendant had confessed to the November 4, 1978, burglary of the home of Jack Bloomfield, in which several guns were taken. In open court defendant admitted participating in the burglary along with Ron and Brian Pfahl. Defendant said Brian Pfahl initiated the burglary.

Prior to the sentencing hearing attorney Dick Williams entered his appearance on defendant's behalf, and Rose withdrew. A presentence report was prepared which included a statement by defendant concerning the offense. According to the statement, defendant and the two others took some shotguns from Bloomfield's home and hid them in the woods. They used them for target shooting until the ammunition was gone. The guns subsequently disappeared from the place they were hidden. Defendant did not know what happened to them but suspected that Ron Pfahl might have sold them.

The report also indicated that defendant, who was 18 years old at the time of the offense, had no criminal record. He had begun to have problems in school in the 7th and 8th grades. His attendance record in high school was very poor, and he eventually dropped out. As a result of his problems with school, his parents obtained psychological and psychiatric treatment for him. Reports of various mental health professions were included in the report, some of which indicated defendant lacked motivation for treatment.

A report from the coordinator of the Early School Leavers Program at Illinois Central College indicated that defendant had enrolled in the program in the fall of 1978 but was expelled because of poor attendance. He

enrolled again in the spring after the indictment was returned. The coordinator noted an improved attitude, and defendant obtained his G.E.D. According to the presentence report, defendant obtained employment as a laborer for a construction firm in June of 1979 at a wage of $4.50 per hour.

At the sentencing hearing Jack Bloomfield testified for the State that the value of the stolen guns was $1,391.64, and that he had recovered $873.19 from his insurance company. In mitigation, defendant's employer testified that he would continue to employ defendant who had been a good and punctual worker. Defendant testified, expressing remorse over the incident. He acknowledged that he was indebted to Bloomfield for the stolen guns and stated he intended to make restitution if able. In his argument defense counsel stated:

"[Defendant] is ready to make payment for whatever he did."

The judge then extensively reviewed the factors in aggravation and mitigation set forth in sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1 and 1005—5—3.2.) He expressed skepticism over defendant's improvement after the indictment was returned, stating, "Everybody is good when they're facing the music." He then imposed a 3-year sentence of imprisonment and ordered defendant to make restitution in the amount of $518.45 to Bloomfield and $873.19 to his insurance company. (The written order subsequently entered erroneously sets the amounts of restitution at $500.45 to Bloomfield and $1,391.64 to his insurance company.) As much restitution as possible was ordered deducted from defendant's $750 bail deposit after reduction of costs. The balance of the restitution was ordered due 5 years after sentencing or 1 year after defendant's release from prison, whichever is sooner.

Following the denial of defendant's motion to vacate guilty plea, he entered a negotiated plea of guilty to count I. Pursuant to the agreement, the remaining counts of the indictment were dismissed, a concurrent 3-year sentence of imprisonment was imposed, and defendant was ordered to make restitution to the victim of count I and to the victims of the counts that were dismissed.

## I. The First Guilty Plea

Defendant first contends he should be permitted to withdraw his plea of guilty to count III because he was denied his constitutional right to counsel of his choice when the trial court denied his motion for a continuance for substitution of counsel. We disagree.

In *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229, our supreme court, faced with a similar question, summarized the applicable law as follows:

"By statute in Illinois, the decision to grant or to deny a motion for continuance lies in the sound discretion of the court. (Ill. Rev. Stat. ch. 1979, 38, par. 114—4(e)). * * * Our continuance provisions are to be construed 'to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the State to a speedy, fair and impartial trial.' (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(h).) To accomplish this end, section 114—4(e) provides that all motions for continuance 'shall be considered in light of the diligence shown on the part of the movant.' (Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) * * * The determination of whether the denial of a continuance violates a substantive right of the accused must turn on the particular facts of each case. [Citation.]" (79 Ill. 2d 341, 347-48, 403 N.E.2d 229, 233.)

The supreme court acknowledged that the accused in a criminal case has a constitutional right to counsel of his own choice but stated that such right "may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime." 79 Ill. 2d 341, 349, 403 N.E.2d 229, 234.

■■ In the instant case defendant was charged on December 6, 1978. As a result of his motion for substitution of judge, a judge who ordinarily sits in another circuit was assigned to the case. To facilitate the progress of the case, on May 22, 1979, that judge entered an order setting the jury trial for June 27, 1979, and requiring all pretrial motions to be filed on or before June 14, 1979. Nevertheless, on the date set for trial defendant presented his motion for continuance for substitution of counsel. No reason was given why defendant wanted the change. (See *People v. Washington* (1968), 41 Ill. 2d 16, 20, 241 N.E.2d 425, 427.) Although the jury was present, the attorney defendant wanted to substitute for his first retained attorney was out of town. Under these circumstances, we find no abuse of discretion.

Defendant next argues the trial court erred in denying his request for probation. He maintains that in light of the evidence of his change in character, "the judge failed to sufficiently acknowledge [his] efforts at improvement," and other mitigating factors. We disagree.

Under section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)):

"Except where specifically prohibited by * * * this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

(2) probation or conditional discharge would deprecate the seriousness of the offenders conduct and would be inconsistent with the ends of justice."

In imposing sentence in the instant case, the trial judge expressly found both aggravating factors listed in the above statute. Such a finding is presumed to be correct. Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1.

■■ Defendant was convicted of a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 19—1.) If a sentence of imprisonment is imposed for such an offense, it shall be a determinate term of between 3 and 7 years in the absence of factors justifying an extended term. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—1(a)(5) and 1005—8—2.) Defendant had a history of problems in school, including excessive absenteeism, which resulted in his dropping out of high school. He underwent psychiatric treatment intermittently for the next three years. Mental health professionals indicated he was not interested in being helped. Under these circumstances, the trial judge's skepticism concerning defendant's abrupt character improvement following the return of the indictment was warranted. The trial judge stated he was unable to find that defendant was particularly likely to comply with the terms of probation, or that his character and attitudes indicated he was unlikely to commit another crime. (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1(a)(9) and 1005—5—3(a)(10).) These determinations cannot be said to be erroneous. Considering the aggravating and mitigating factors listed in the Code, we believe defendant has not overcome the rebuttable presumption of the correctness of his sentence which was the minimum sentence of imprisonment for burglary.

Defendant's next arguments concern the propriety of the order of restitution. Section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6) provides, in part:

"If restitution is part of the disposition, the defendant shall make restitution to the victim in accordance with the following:

(a) A pre-sentencing hearing shall be held to assess the financial capacity of the defendant to make restitution as well as to determine the amount and conditions of payment at the court's discretion.

(b) Restitution shall be made in an amount not to exceed the actual out of pocket expenses or loss to the victim proximately caused by the conduct of the defendant * * *."

■■ Defendant first argues that the trial court erred by failing to conduct a finding on his financial capacity to make restitution. He argues that the evidence at the sentencing hearing indicates he does not have such financial capacity. We believe this issue has been waived. Not only did defendant fail to raise it in the trial court, but defense counsel expressly argued that defendant was ready to make payment for what he did. (See *People v.*

*Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) In any event, evidence at the sentencing hearing showed that, while living at home with his parents, defendant was earning $4.50 per hour, and that his employer, who was aware of defendant's problems with the law, would continue to employ him. The presentence report indicated defendant had savings of $175 and no liabilities. Sufficient evidence of his financial capacity was presented to justify the order of restitution.

Defendant's next contention is that the trial court erred in ordering him to make restitution to Bloomfield's insurance company because it was not "the victim" as that term is used in section 5—5—6, which provides that if restitution is ordered, the defendant shall make restitution to "the victim." According to defendant, the victim was Bloomfield, and his "actual out of pocket loss" was $518.45, or the value of the stolen guns less the money he received from his insurance company.

The State effectively concedes that Bloomfield's insurance company was not "the victim" as that term is used in section 5—5—6. It argues, however, that Bloomfield's "actual out of pocket loss" was $1391.64, or the value of the stolen guns.

■■ The parties have not cited, nor are we aware of any cases construing the term "actual out of pocket loss" in section 5—5—6. We believe the State presents the better view. Bloomfield's "actual out of pocket loss" was the value of the stolen guns. The fact that he had a contract of insurance which reimbursed him for part of such loss does not decrease the amount of the loss. Our view is supported by the analogous collateral source rule of damages in tort. See *Beaird v. Brown* (1978), 58 Ill. App. 3d 18, 373 N.E.2d 1055.

## II. The Second Guilty Plea

With respect to the second guilty plea, defendant makes two arguments. First, he contends that the second plea was conditioned on the first. He maintains he entered the second plea and received the negotiated sentence which included a concurrent 3-year term of imprisonment because he had already been sentenced to 3 years imprisonment on his first guilty plea, his motion to vacate such plea had been denied, and, since he would have been unable to post bond, he had to begin serving his sentence on count I. He argues that if this court vacates his conviction on his first guilty plea, or reduces the sentence of imprisonment imposed thereon to probation, he should be permitted to withdraw his second plea. In light of our holding above, we need not consider this issue.

Defendant's final contention is that the trial court was without authority to order him, as part of his sentence on count I, to make restitution to the victims of the counts which were dismissed. He argues that the proper remedy for such error is to modify his sentence rather than to vacate his conviction and remand the cause for him to plead anew. It should be noted

that during the pendency of this appeal the parties filed various motions and responses which were taken with the case. First, the State filed a motion agreeing with defendant's motion to withdraw his second guilty plea, that involving count I. In its motion the State set forth its view that the interests of justice would best be served by vacating the conviction and remanding the cause for defendant to plead anew. Defendant filed a response in opposition to the State's motion, arguing that the withdrawal of his second guilty plea "has at all times been conditioned on the disposition of the first plea." By his response, defendant indicated he did not want to withdraw his second guilty plea unless his conviction on the first was vacated, or the sentence of imprisonment imposed thereon was reduced to probation. The State then filed a motion to dismiss defendant's appeal as to count I, and defendant filed a response in opposition.

The motions and responses indicate that since we have affirmed the first guilty plea, defendant does not want his conviction on the second guilty plea vacated. Because we believe that the only proper remedy for the allegedly erroneous sentence on count I would be to vacate the conviction and to remand for defendant to plead anew, we find that defendant has waived any error, and we grant the State's motion to dismiss the appeal.

■■ Defendant's sentence on count I was part of a plea agreement he entered into with the State. Defendant is not entitled to have part of the agreement unfavorable to him modified on appeal and the rest of the agreement preserved. As our supreme court said in *People v. Stacey* (1977), 68 Ill. 2d 261, 369 N.E.2d 1254, discussing a related issue:

> "To allow the defendant to appeal by attacking only the sentence would make for the unwholesome situation of the accused, through negotiation with the State, obtaining modification or dismissal of the more serious charges, entering a plea of guilty, and then attacking not his admission of the crime but only the sentence imposed." (68 Ill. 2d 261, 266-67, 369 N.E.2d 1254, 1257.)

See also *People v. White* (1972), 5 Ill. App. 3d 205, 282 N.E.2d 467.

For the reasons stated above, in case No. 79-805 (the first guilty plea), the conviction entered by the Circuit Court of Tazewell County is affirmed. The sentence entered by that court is also affirmed except to the extent that it sets the amount of restitution at $500.45 to Bloomfield and $1,391.64 to Bloomfield's insurance company. The amount of restitution is modified to $1,391.64 to Bloomfield. In No. 79-898 (the second guilty plea), the appeal is dismissed.

No. 79-805—Affirmed as modified.

No. 79-898—Appeal dismissed.

BARRY and SCOTT, JJ., concur.