THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT J. ABRAHAM, Defendant-Appellant.

Third District    No. 80-200

Opinion filed October 31, 1980.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendant, Robert J. Abraham, was convicted of aggravated battery following a jury trial. He was sentenced to a term of 2½ years imprisonment and was ordered to make restitution to the victim within one year of his release from the penitentiary. On appeal the defendant raises only one issue: whether the cause should be remanded for a hearing to assess his financial capacity to make restitution and to determine the amount and conditions of payment.

Relevant to the issue raised is the fact that the defendant was represented at trial by the public defender. Following trial, the defendant, pro se, filed a motion for a new trial, alleging incompetence on the part of defense counsel. At the hearing on this motion, the defendant's financial status was reviewed by the trial judge to determine if the defendant was indigent. The trial judge so determined, and private counsel was appointed to represent the defendant in post-trial proceedings.

Although the defendant was found to be indigent for purposes of appointing counsel, he testified at the hearing that he had approximately $3,000 in the bank, of which amount he claimed to owe his brother the sum of $2,000. He further testified that he owned a 1974 Ford truck with an approximate value of $1,000. No corroborative testimony was given to establish the exact nature and amount of the debt the defendant allegedly owed to his brother. The defendant asserted that he would need between $5,000 to $7,000 to hire an attorney.

The defendant's motion for a new trial was denied, and the cause then proceeded to sentencing. Records of the victim's lost wages, medical expenses and a health claim were included in the presentence report. In addition, the presentence report indicated considerable net assets of the defendant as well as his capacity to earn $500 per week. The victim's medical expenses totalled $975.55, according to the records contained in the presentence report and his lost wages amounted to $216.38. At the conclusion of the report, the probation officer preparing it recommended that the defendant be ordered to "pay restitution in the amount of $974.35 to the victim—for days missed at work $216.38." The $974.35 figure appears to represent the amount received by the victim from his insurance company.

Where restitution is part of a defendant's sentence, the statute provides as follows:

"(a) A pre-sentencing hearing shall be held to assess the financial capacity of the defendant to make restitution as well as to determine the amount and conditions of payment at the court's discretion." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(a).)

We note initially that the question of whether to hold a hearing is within the trial court's discretion. In the instant case we find no abuse of that discretion.

■■ From the testimony given at the defendant's post-trial hearing to determine if he qualified for appointed counsel, the trial judge learned that the defendant had assets totalling from $2,000 to $4,000, depending upon whether the alleged debt to the defendant's brother was valid and if so, whether it would take precedence over the payment of restitution to the victim in the present case. The presentence report apprised the judge of the defendant's earning capacity of approximately $500 per week. We conclude that this information was sufficient to assess the financial capacity of the defendant to make restitution.

The amount of the restitution to be paid is not ambiguous, as the defendant contends. Rather, it is the total loss to the victim, pursuant to section 5—5—6(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6(b)). In this case that amount is $1,191.93, representing the total of $975.55 in medical expenses and $216.38 in lost wages, as documented in the presentence report. The term "actual out of pocket loss," as that term appears in section 5—5—6 (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—6), has recently been construed by this court in *People v. Wilson* (1980), 87 Ill. App. 3d 544, 408 N.E.2d 1209, to mean the full amount of loss suffered by the victim, regardless of any insurance payments received. Such an interpretation finds support in the analogous collateral source rule of damages in tort. See *Beaird v. Brown* (1978), 58 Ill. App. 3d 18, 373 N.E.2d 1055.

■■ The designation of one year after the defendant is released from the penitentiary for the making of restitution is a sufficiently specific condition of payment to satisfy the statutory requirement.

The cases relied upon by the defendant in support of his argument that a hearing is necessary are distinguishable from the case at bar. The restitution statute found unconstitutional in *People v. Cook* (1980), 81 Ill. 2d 176, 407 N.E.2d 56, contained no provisions regarding inquiry into the defendant's ability to pay. In *People v. Love* (1980), 83 Ill. App. 3d 948, 404 N.E.2d 1085, the question before the reviewing court was whether the trial court erred in delegating judicial authority to the probation department to determine the amount of restitution. *People v. Harrison* (1980), 82 Ill. App. 3d 530, 402 N.E.2d 822, and *People v. Daminski* (1980), 80 Ill. App. 3d 903, 400 N.E.2d 708, interpret different statutory provisions regarding restitution than does the case at bar.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.