THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH R. EADES, Defendant-Appellant.

Fourth District No. 4—83—0344

Opinion filed April 4, 1984.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Joseph Eades, was convicted in a bench trial of criminal damage to property for vandalizing some handicap parking signs owned by the town of Normal. He was placed on probation for one year, with 90 days' periodic imprisonment in the county jail, and ordered to pay restitution of $131.76 to the town of Normal and a $750 fine. On appeal the defendant argues that the record fails to show that he made a knowing waiver in open court of his right to a jury trial, that the State failed to prove his guilt beyond a reasonable doubt, and that the trial court imposed the financial conditions of the probation order without first determining his ability to pay them. We affirm.

The record contains only two references to the defendant's waiver of his right to a jury trial. One is a form that expresses the defendant's intentions to plead not guilty to the charge and to waive a jury trial; it bears the defendant's signature and is dated December 3, 1982, and file stamped December 9, 1982. The other reference is contained in a docket entry for December 6, 1982, which says, "Jury waiver filed," and goes on to give the date scheduled for the defendant's bench trial. The defendant was represented by counsel throughout this period and also at trial.

The defendant argues that these references in the record are insufficient to show that he made a valid waiver of this right. Section 103—6 of the Code of Criminal Procedure of 1963 says, "Every person accused of an offense shall have the right to a trial by jury unless un-

derstandingly waived by defendant in open court." (Ill. Rev. Stat. 1981, ch. 38, par. 103—6.) Compliance with the statute cannot be found in or inferred from a silent and otherwise complete record. (*People v. Ceaser* (1974), 17 Ill. App. 3d 650, 307 N.E.2d 753.) The defendant cites *People v. Clay* (1974), 19 Ill. App. 3d 296, 311 N.E.2d 384, and *People v. Gaston* (1971), 132 Ill. App. 2d 900, 270 N.E.2d 846, for the proposition that a jury waiver form signed by a defendant is no improvement on a silent record, that the form does not by itself show compliance with section 103—6.

The State argues that the defendant has waived this issue because he did not raise it in his post-trial motion. We choose instead to treat it on its merits, for any error in this regard is arguably an exception to the waiver rule.

In *People v. Oatis* (1977), 47 Ill. App. 3d 229, 361 N.E.2d 1146, this court held that a defendant's waiver of his right to a jury trial was established by a signed waiver appearing in a record that did not contain the transcripts of any pretrial proceedings. The defendant was basing his attack on the jury waiver on the insufficiency of the record, and the court observed that it was the duty of the defendant, as the party bringing the appeal, to supply the reviewing court with an adequate and complete record. The court then said:

> "Accordingly, we determine that in a criminal case when the common law record shows that the defendant has waived jury trial, on appeal after a bench trial, a defendant claiming error in the jury waiver must cite the specific error that occurred and substantiate that claim by the presentation of a sufficient record. If the claim is that the jury waiver was not made in open court or that it was not understandingly made, the record should be sufficient to cover all proceedings which involved the waiver." (47 Ill. App. 3d 229, 232, 361 N.E.2d 1146, 1148.)

The circumstances and argument here are similar. The defendant argues only the inadequacy of the record—that it fails to show his waiver of the right to a jury trial. The record contains transcripts only of the trial and of the sentencing hearing; the only memorials of the pretrial proceedings are contained in the common law record, with its docket entries and filed documents. As *Oatis* suggests, we must distinguish between an incomplete record, such as the one here, and a complete record, which was present in both *Clay* and *Gaston*. In each of those cases the appellate court had before it a transcript of the court proceeding in which the defendant was believed to have waived his right to a jury trial, and the failure to satisfy section 103—6 was evident from the transcript.

The record here is incomplete. It contains no transcript or report of any pretrial proceeding. Thus, we have nothing before us except the signed jury waiver form to show whether the defendant, in open court, understandingly waived his right to a jury trial, and nothing in the record contradicts the validity of the form. Under the circumstances here, the signed form alone establishes the defendant's valid waiver. *Oatis.*

 The defendant also argues that the State failed to prove his guilt for the offense beyond a reasonable doubt. Specifically, the defendant questions the identification of him by the State's eyewitness and asserts the defense of alibi that he and some friends testified to at trial.

Robert Keith, who witnessed part of the occurrence, testified in the State's behalf. On the night of the offense, August 28-29, 1982, Keith was serving as a watchman at the Tent of Flowers in Normal. The Tent of Flowers, as its name suggests, was an outdoor tent covering a display of flowers. Keith was there that evening guarding the inventory. He testified that around 10 or 11 p.m. he heard a metallic scraping sound; he looked across the street toward the First National Bank of Normal and saw a handicap parking sign lying on the pavement and a group of between seven and ten persons gathered around another sign. Keith identified the defendant as the larger of two persons that were rocking the sign back and forth. The defendant was wearing blue jeans and a black tee shirt, which Keith knew bore the words "Jack Daniel's" because he had seen the shirt at closer range several minutes earlier, when the defendant arrived. The post of the sign broke, and it was discarded next to the other one. The group then gradually dispersed.

Keith testified that he walked across the street to Garcia's Restaurant and telephoned the police, who arrived several minutes later. As Keith described to an officer what he had seen, the defendant walked by; in response to the officer's question, Keith identified the defendant as one of the persons that had broken the sign.

Keith acknowledged at trial that several years before this incident his car and the defendant's car were in a collision, which Keith blamed on the defendant. Keith said that he has never been compensated for the damage to his car.

Ralph Ebert, a police officer for the town of Normal, testified that he was sent to the area at 12:24 a.m. on August 29, 1982, in response to Keith's telephoned report. Keith described to him a big, bearded man wearing a tee shirt with the words "Jack Daniel's" on it. The defendant, who was nearby, matched this description. Ebert also testi-

fied that he found two handicap parking signs lying on the sidewalk in front of the bank; the jagged appearance of the posts suggested to him that the signs had been rocked back and forth until they broke.

The defendant testified. He denied having anything to do with wrecking the handicap parking signs. On August 28, 1982, he arrived at Garcia's in Normal around 7:30 in the evening. At that time one of the signs in front of the bank was bent over and the other was straight. He and a group of friends then drove to Lake Bloomington, where they stayed until 11:30; they were back at Garcia's at 11:50. The defendant noticed a group of persons gathered around the handicap parking signs; at that time one of the signs was broken off and the other was bent over. The defendant joined the group but did nothing. He then went to Garcia's and ate; when he left about a half hour later police officers were outside.

The defendant testified that another person matching the description given by Keith was present in the group around the handicap parking signs. According to the defendant, the other person, Jeff Belcher, resembles him and they were dressed similarly that night. The defendant did not see Belcher do anything to the signs. The area was well lighted. The defendant was impeached by two theft convictions.

Several of the defendant's friends testified in his behalf. Tammi Rippon said that she had a date with the defendant on August 28, 1982, beginning at 7:30 p.m. She met him at Garcia's, and they went to Lake Bloomington with some other persons, staying there until 11:30. The group then returned to Normal and Garcia's, arriving shortly before midnight. At that time the handicap parking signs in front of the bank were down. Rippon denied that the defendant had any part in breaking the signs.

James Hodge was one of the friends who accompanied the defendant and Rippon to Lake Bloomington on August 28. Hodge testified that he and the defendant, in separate vehicles, returned to Garcia's at the same time, about midnight. Hodge saw five or six persons gathered around the handicap parking signs in front of the bank. One of the signs was lying on the pavement, and the other was standing, apparently undamaged. Hodge denied that the defendant did anything to break the one sign.

Dennis Gurley, another member of the Lake Bloomington group, testified that they returned in several vehicles to Garcia's around midnight; he was five or six minutes behind the defendant. Gurley noticed upon their return that one of the handicap parking signs was lying on the pavement. Gurley denied that the defendant had anything to do with that.

Finally, Gregory Adams testified that he was in the neighborhood of Garcia's and the bank beginning at 5:30 or 6 p.m. on August 28, 1982. At 7:30 or 7:45 that evening he noticed that the posts of the two handicap parking signs in front of the bank were bent. As he tried to straighten one it broke off, and he placed it on the sidewalk. He left the other sign as it was, bent backwards. According to Adams, the defendant arrived at Garcia's sometime after 12:30 and the police arrived later.

The defendant argues that the evidence was insufficient to convict him. According to the defendant, the identification of him as one of the persons destroying the signs was undermined by defense evidence that the signs were already down when he returned that night from Lake Bloomington and by the witness' bias against him, which stemmed from their automobile collision. Also, the defendant points to his testimony about Jeff Belcher, who resembles him and was dressed similarly that night.

As the defendant acknowledges, a conviction may be based on positive identification by one eyewitness. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) Keith had the opportunity to identify the defendant accurately, for the area was brightly lighted. Furthermore, the weaknesses that the defendant finds in the State's case—Keith's possible bias, and the contradiction of his testimony by the defense—depended on the credibility of the witnesses, a matter specially reserved to the trial judge's role here as trier of fact (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154; *People v. Hammond* (1970), 45 Ill. 2d 269, 259 N.E.2d 44). We cannot say that the trial judge's determination was wrong. The evidence against the defendant was proof beyond a reasonable doubt.

■ The defendant argues last that the trial court erred in imposing financial conditions of the probation order without determining his ability to pay them; the defendant concludes that the record fails to justify those conditions of his probation. The court ordered the defendant to pay restitution of $131.76 and a fine of $750.

Section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—6) provides in part:

"If restitution is part of the disposition, the defendant shall make restitution to the victim in accordance with the following:

(a) A pre-sentencing hearing shall be held to assess the financial capacity of the defendant to make restitution as well as to determine the amount and conditions of payment at the court's discretion."

The trial court may do this at the sentencing hearing rather than at a

presentencing hearing. (*People v. House* (1981), 98 Ill. App. 3d 304, 424 N.E.2d 412; *People v. Abraham* (1980), 89 Ill. App. 3d 786, 412 N.E.2d 45.) Similarly, in imposing a fine the court must consider "the financial resources and future ability of the offender to pay the fine" (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1(d)(1)).

The sentencing hearing in this case was held immediately after the denial of the defendant's post-trial motion and began with testimony from the defendant about his employment. By the time of the hearing he had worked two months for Professional Drive Away Service, which involved driving trucks. His hours were irregular—he was on call—and he expected the work to grow more frequent. At the same time, he was on seasonal layoff—this was April—from the Unit Step Company and expected to be recalled to work when the weather improved.

The State recommended the maximum term of imprisonment, 364 days, and defense counsel recommended a combination of jail, probation, and restitution. The court imposed the restitution and fine as conditions of the defendant's probation without making either of the required statutory findings.

The State correctly points out that the defendant has waived these objections because he did not raise them at the sentencing hearing. (*People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855; *House*.) In *Davis* the court dealt with sections 5—4—1(c) and 5—8—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)), which require that in felony cases the trial judge explain for the record his reasons for imposing a particular sentence. *Davis* held that objection to the trial judge's failure to make the required explanation is waived if not raised in the trial court. The same result should control the statutory provisions at issue here.

Furthermore, defense counsel specifically recommended restitution along with time in the county jail and probation in contrast to the State's recommendation of the maximum term in the penitentiary. Defense counsel knew what the amount of restitution would be, and the defendant cannot argue now that the trial court had to make an express finding of his ability to pay restitution. *People v. Wilson* (1980), 87 Ill. App. 3d 544, 408 N.E.2d 1209.

Affirmed.

MILLS, P.J., and GREEN, J., concur.