THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LOUIS A. EARLY, Defendant-Appellant.

Second District   No. 2—86—0251

Opinion filed July 23, 1987.—Rehearing denied August 25, 1987.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Defendant, Louis Early, was convicted of official misconduct (Ill. Rev. Stat. 1985, ch. 38, par. 33—3(b)) and he appeals, contending that: (1) due process required the trial court to dismiss the indictments against him; (2) he was not proved guilty beyond a reasonable doubt of one of the counts of official misconduct; and (3) he was improperly ordered to make restitution in an amount exceeding the losses sustained by the clerk of the circuit court as a result of defendant's criminal conduct.

Defendant was charged with five counts of official misconduct and after a stipulated bench trial he was found guilty on all counts. Defendant was sentenced to a two-year term of probation, 191 days' imprisonment in the county jail with credit for time served, and he was ordered to make restitution of $5,400.

Prior to trial, the defendant filed a motion to dismiss the indictments, alleging that the sheriff of Du Page County had agreed not to file criminal charges against him if defendant made certain inculpatory statements and made restitution. Defendant alleged that he had fulfilled his part of the agreement, and that due process required that the criminal charges against him be dismissed in accordance with the agreement by the sheriff. The motion was denied by the trial court.

The defendant also made a pretrial motion to suppress statements, alleging that the statements were not voluntarily made and, after a hearing, the trial court suppressed defendant's statements.

At the stipulated bench trial, the prosecutor stated that the stipulated facts included that the defendant was employed by the sheriff of Du Page County as a sheriff's deputy and was on duty on the dates of June 23, July 5, July 11, July 27, and August 5, 1984, and his assignment on those dates was to collect bond money. That Christine Santa Maria and Marguel Garza would testify that on August 5, 1984, they gave defendant $500 bond money to obtain the release of a person then in custody and were given a receipt signed by defendant, but the records of the sheriff's office did not show that the money had been received. That James Picardi would testify that on July 11, 1984, he gave $150 to the defendant for a bond and received a receipt, but the sheriff's records did not evidence that money had been received. That Paul Rothe would testify that on June 23, 1984, he gave defendant $1,000 in cash in order to post bond, and he received a receipt, and the records failed to indicate that the sheriff received that money. Peter Gorski would also testify that on July 5, 1984, he gave defendant $1,500 in order to post bond, and received a receipt, but again the records of the sheriff's office did not show this transaction. Also, Robert and Donald Bendis would testify that on July 27, 1984, they gave defendant $500 bond money and received a receipt, but the sheriff's records did not show that the men had posted this money.

In addition, the prosecutor stated that each of the persons posting a bond was shown a roster book containing 240 pictures of people employed by the sheriff's department and all identified the defendant as the man to whom they gave their cash for the purpose of posting bond. The prosecutor further stated that the records in the sheriff's department did not reflect that bond money was received from those persons, and the money actually received by the sheriff balanced with the amount reflected in the sheriff's records. The persons involved had receipts which were either signed by the defendant or were left unsigned. The prosecutor stated that as part of the stipulation the parties would agree that the witnesses would identify the defendant in open court.

Defense counsel then clarified the facts by making certain corrections and additions. He stated that James Picardi picked out four photographs, saying that defendant was the one to whom he may have given the money, but he was not sure. Defense counsel further elaborated on Picardi's identifications, stating that Picardi had said that none of the other three men, whose photos he had chosen, was the man to whom he gave the bond money. Also, that the deputies would testify that while the defendant was assigned to take the bond money on the dates at issue, he was not the only person working at the jail

at that time. Defense counsel stipulated that the State's witnesses would testify as stated, with the corrections noted.

Defendant contends first that the trial court should have dismissed the indictments because the sheriff entered into an agreement not to proceed criminally against him. At the hearing of defendant's motion to dismiss the indictments, a tape of an interview conducted by Staff Sergeant Zaruba of the defendant was played. During the interview, Zaruba stated, "At this time, Lou, you realize we are not going criminally on this, it's just an internal thing." After the defendant denied taking the money, Zaruba said that he was aware that defendant was operating under the stress of financial strain, and stated, "The Sheriff realizes that, and that's why he's going this way instead of criminal." Zaruba added, "He hopes, and I hope, that we can end everything right here and get it taken care of without going in that direction." After defendant asked Zaruba what he wanted, Zaruba said, "I just want the truth, I want to get everything laid out so we can end the whole, the whole scenario here. The whole investigation, the whole everything, right here, right now, and we'll take care of it without going any further action, without me giving you these."

At the hearing, the defendant testified that Zaruba had motioned to some criminal complaints made out against the defendant when Zaruba stated that if he gave a truthful statement "these" would not have to be given to him. Defendant testified further that he was not advised of his rights, and that before he made inculpatory statements, Zaruba turned off the tape and promised that there would be no criminal prosecution. According to defendant, Zaruba called the sheriff during their meeting, then told defendant that the sheriff demanded full restitution and that the sheriff promised that no criminal prosecution would ensue if he cooperated fully and disclosed any knowledge as to misappropriation of funds. The defendant then made admissions as to four occasions on which he took bond money and he agreed to make restitution, to resign his position, and to assign his accrued pay. Defendant testified he later met with the sheriff, who said he would not be criminally charged. According to defendant, he did everything requested of him under the agreement. When defendant was subsequently arrested, he expressed his surprise, and made a second inculpatory written statement.

John Zaruba testified that defendant was not given his *Miranda* warnings and was not advised pursuant to the Uniform Peace Officers' Disciplinary Act (Ill. Rev. Stat. 1985, ch. 85, par. 2551 *et seq.*) before giving his statement, but he testified that defendant was free to leave during the interview and denied that he threatened defendant

with criminal complaints. Detective Warren Wilkosz and Sergeant Zaruba served the defendant with an arrest warrant on October 24, 1984, and, after he was given the *Miranda* warnings, defendant signed a waiver and gave a written statement admitting his guilt.

■ The defendant contends that he relied to his detriment on the sheriff's agreement by resigning, by assigning wages due him to make restitution, and by making incriminating statements and argues that due process requires that the State's Attorney not prosecute him. While recognizing that the sheriff, not the State's Attorney, entered into the agreement, the defendant suggests that an agreement by the top law enforcement official in the county implicates the same due process concerns. We do not agree.

In *People v. Starks* (1985), 106 Ill. 2d 441, 478 N.E.2d 350, the State agreed to dismiss the charge against the defendant if he took and passed a polygraph test. The defendant took the test and passed it, but the State did not dismiss the charge. Our supreme court remanded the case to determine if there was an agreement, holding that if there was an agreement, the State must perform its part because the defendant surrendered his fifth amendment privilege against self-incrimination. (106 Ill. 2d 441, 451-52, 478 N.E.2d 350.) *Starks* was subsequently distinguished by the court in *People v. Boyt* (1985), 109 Ill. 2d 403, 488 N.E.2d 264, *cert. denied* (1986), 476 U.S. 1143, 90 L. Ed. 2d 699, 106 S. Ct. 2254, where it held that due process was not implicated where the defendant pleaded guilty after the State repudiated the plea agreement as that defendant did not provide the State with any new information, confess guilt, testify or otherwise incriminate herself in reliance on the State's promise. The court held that a defendant must be able to point to a liberty restriction or deprivation as a result of an agreement by the State in order to implicate due process. 109 Ill. 2d 403, 415, 488 N.E.2d 264.

In *People v. Thompson* (1980), 88 Ill. App. 3d 375, 410 N.E.2d 600, as here, it was not the State's Attorney who made the agreement with the defendant. In that case, an auditor for the Illinois Department of Revenue told the defendant that if he would reach an agreement to pay the taxes that were owing, it would "solve all the tax problems." The defendant then entered into an agreement and paid the tax liability, after which criminal charges were brought against him. In rejecting the defendant's argument that the State was bound by the agreement not to prosecute, the court noted that the State's Attorney is a constitutional officer (Ill. Const. 1970, art. VI, sec. 19), whose duty it is to commence and prosecute all actions, suits, indictments and prosecution, civil and criminal, in the circuit court of

his county, in which the people of the State or county may be concerned (Ill. Rev. Stat. 1985, ch. 14, par. 5(1)). The court in *Thompson* determined that a reasonable subjective expectation that a person making the agreement had authority to bind the prosecutor only went to the question of admissibility of any statements made during negotiations, not whether the prosecution was precluded. (*People v. Thompson* (1980), 88 Ill. App. 3d 375, 379, 410 N.E.2d 600; see also *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517.) The *Thompson* court held that there had been no due process violation because there was no showing of actual or substantial prejudice. *People v. Thompson* (1980), 88 Ill. App. 3d 375, 380, 410 N.E.2d 600.

Finally, in *People v. Dandridge* (1987), 152 Ill. App. 3d 941, 505 N.E.2d 30, a police detective told defendant that if he talked about his involvement in one area burglary, there would only be one charge brought against him. Defendant gave a written statement as to one burglary, but he was charged with two burglaries. When the State appealed from the circuit court's dismissal of one charge, contending that the State's Attorney was not bound by any unauthorized promise made by the detectives, this court reversed, holding that an agreement by a government official with only apparent authority to determine whether a prosecution will be commenced does not bind the State's Attorney. 152 Ill. App. 3d 941, 944, 505 N.E.2d 30.

The defendant argues that the holding in *Dandridge* is not dispositive of the present case because he was not urging a theory of apparent authority to bind the State's Attorney to the agreement made by the sheriff, but, rather, his theory on appeal is that due process requires that he not be prosecuted. We fail to see how the State's Attorney's failure to abide by an agreement made by someone who had no authority to make the agreement implicates due process.

The holding in the one case cited by defendant in support of his argument, *United States v. Rodman* (1st Cir. 1975), 519 F.2d 1058, is not grounded on due process. In that case, the Securities and Exchange Commission (SEC) told defendant that it would recommend to the United State's Attorney that no prosecution be undertaken if defendant gave self-incriminating statements and substantial information to the SEC. The appeals court held that the district court properly dismissed the indictment under the court's supervisory function. (519 F.2d 1058, 1059-60.) In so holding, the court cited two cases, one of which is *McNabb v. United States* (1943), 318 U.S. 332, 87 L. Ed. 819, 63 S. Ct. 608. In *McNabb*, the court made it clear that Federal courts may exercise judicial supervision of the administration of crimi-

nal justice, and that supervision implies the duty of establishing and meeting standards of procedure and evidence which go beyond the safeguards of due process. (318 U.S. 332, 340, 87 L. Ed. 819, 824, 63 S. Ct. 608, 613.) The court's decision in *Rodman* clearly depends upon the Federal court's supervisory powers, not due process guarantees.

The defendant does not offer any State court case in which a prosecutor has been held to be bound by unauthorized promises not to prosecute made by government officials. To the extent that there was a reasonable belief by the defendant that the sheriff had the power to determine whether to prosecute, the statements he made in reliance on that mistaken belief were involuntary and properly suppressed by the trial court. No other actions performed by the defendant in reliance on the agreement resulted in a loss or restriction of his liberty interests; thus, due process guarantees were not implicated. See *People v. Boyt* (1985), 109 Ill. 2d 403, 415, 488 N.E.2d 264, *cert. denied* (1986), 476 U.S. 1143, 90 L. Ed. 2d 699, 106 S. Ct. 2254.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt of one count of official misconduct involving James Picardi because the stipulated evidence failed to show that Picardi identified the defendant as the man who took his bond money or that the receipt which Picardi received had defendant's signature on it.

The stipulated facts included that: defendant was working as a deputy on the date Picardi posted the money; defendant's assignment on that date was to take bond money; Picardi picked the defendant's photograph out of a photograph book containing 240 photographs of sheriff's department personnel; Picardi received a receipt; and receipt of the money was not reported in the sheriff's records. In agreeing to the stipulated facts, defense counsel sought to clarify and correct several facts mentioned by the State's Attorney, and it appears that the State's Attorney meant to agree to those corrections as part of the stipulated facts. Those corrections included that: the receipts at issue were not necessarily signed, or if they were signed, they might have reflected the name of a deputy other than the defendant; Picardi also picked out photographs of people other than the defendant from the roster book; other people were working at the jail on that date; and after indicating that the defendant might have been the person who took the money, Picardi also chose photographs of Deputy Stoekl, Deputy Caldwell and Deputy Stuckey. According to defense counsel, Picardi said that Stuckey was present but did not handle the money. Defense counsel also said that Picardi stated that Caldwell and Stoekl, while present, did not take the money.

Under the stipulated facts, as corrected and clarified by defense counsel, Picardi chose photographs of four men, including that of the defendant, from a roster book depicting 240 people who worked for the sheriff's department. Picardi said that these men were present, but he also said that none of the three men other than the defendant was the person to whom he gave the money. He tentatively identified defendant as the man who took his money, but he was not sure. This evidence, along with evidence that defendant's duty on that date involved taking money from those posting bond, that the defendant gave a receipt, that the intake of money was not reported in the sheriff's records and the cash received equaled the amount recorded, and evidence of other similar incidents in which defendant was identified as the man who took the money was sufficient to prove him guilty beyond a reasonable doubt of this count of official misconduct. Additionally, while somewhat unclear as to the exact extent of the stipulation, it appears that the defense counsel stipulated to all the facts stated by the prosecutor, as clarified or corrected by defense counsel. The State's Attorney stated that all the witnesses, including Picardi, would identify the defendant in open court. Stipulations relating to evidence should be construed to give effect to the intentions of the parties, and they should be broadly construed in furtherance of justice. Such stipulations are binding and conclusive on the parties. (*People v. Buford* (1974), 19 Ill. App. 3d 766, 770, 312 N.E.2d 796.) We conclude that the evidence was sufficient to prove defendant guilty of official misconduct on that count beyond a reasonable doubt.

Finally, the defendant contends that the trial court improperly ordered restitution in the amount of $5,400, when the total of money alleged to have been taken by him was $3,650. In seeking to uphold the order of restitution in the amount of $5,400, the State argues that the five counts of theft which were nol-prossed by the State might have involved an additional amount of $1,750.

It is true that a defendant may be ordered to make restitution to a victim who is not named in the charges for which defendant was convicted if the losses or the damage sustained by the victim were proximately caused by the same criminal conduct of the defendant as that for which he was convicted. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(b); *People v. Duff* (1987), 152 Ill. App. 3d 896, 898, 505 N.E.2d 36.) The defendant may also be ordered to make restitution for losses incurred by the same victim as the result of the same criminal conduct even though they were not set forth in the charging instrument. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(a); *People v. Ensley* (1985), 132 Ill. App. 3d 842, 844, 477 N.E.2d 760.) However,

defendant's argument is that there is no basis on this record to show what losses were to be covered by the additional $1,750. We agree that the record is devoid of any indication of additional victims or additional bond money missing as a result of defendant's conduct. The theft charges which were nol-prossed by the State were included offenses of the official misconduct offenses and could not support additional convictions.

The State alternatively argues that the defendant agreed to the order of restitution as part of his sentence, and he cannot now complain of this additional amount. In the case of *In re F.D.* (1980), 89 Ill. App. 3d 223, 229, 411 N.E.2d 1200, the court held that a defendant is bound by a plea agreement and may not question the sentence to which he agreed. While recognizing that a stipulated bench trial utilized to preserve certain issues on appeal is not necessarily tantamount to a guilty plea (see *People v. Sampson* (1985), 130 Ill. App. 3d 438, 443, 473 N.E.2d 1002), we are also aware of defense counsel's express acceptance, and even promotion, of the sentence eventually imposed by the trial court, including that of restitution in an amount in excess of the losses set forth in the charging instrument. Where a defendant invites the trial court to act in a certain manner, he may be precluded from arguing that conduct was improper on appeal.

In *People v. Eades* (1984), 123 Ill. App. 3d 113, 462 N.E.2d 819, defense counsel requested restitution as part of the sentence recommended for defendant. Defendant on appeal argues that restitution was improperly ordered because the trial court failed to make an express finding of defendant's ability to pay, as required by statute. The appellate court held that defendant was precluded from arguing error on appeal regarding conduct which he invited at the trial level. (123 Ill. App. 3d 113, 119, 462 N.E.2d 819.) We find this case to be analogous. Here, defense counsel told the trial judge that he would join in a recommendation to the court that defendant make restitution as ordered and he acknowledged that the prosecutor had determined the amount to be approximately $5,400.

Defendant argues that he could not agree to an unauthorized disposition, citing *People v. Kujawa* (1985), 132 Ill. App. 3d 828, 829, 477 N.E.2d 759. However, in *People v. Beavers* (1986), 141 Ill. App. 3d 790, 796-97, 491 N.E.2d 438, the court held that defendant's invitation to the court to enter an order of restitution, which she subsequently on appeal claimed to be erroneous, resulted in the issue being waived for purposes of appeal. In so holding, the court acknowledged that the trial court had exceeded its statutory authority in ordering payment to a particular party, but the reviewing court concluded that

it could not allow the defendant to complain of an error in which she acquiesced or which she invited. Here, the order of restitution may have been proper, but the factual basis for such a determination does not appear in the record because defendant's actions of acquiescence, and even invitation, made such a record basis unnecessary.

We do, however, agree with the defendant's additional argument that he should have been allowed to have the amount of restitution reduced by any amount he had already paid pursuant to his private agreement with the sheriff. Any amount recovered would reduce the out-of-pocket loss actually experienced by the clerk of the circuit court, and that amount should have been taken into consideration. (See *People v. Allen* (1983), 119 Ill. App. 3d 186, 194, 456 N.E.2d 336; *People v. Krug* (1981), 97 Ill. App. 3d 938, 943, 424 N.E.2d 98.) We therefore remand the cause for a determination of the amount paid by defendant pursuant to his private agreement with the sheriff, with directions that a credit of this amount be applied toward the restitution amount of $5,400.

Affirmed in part, and reversed and remanded in part.

LINDBERG, P.J., and INGLIS, J., concur.