THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID L. SAMS, Defendant-Appellant.
Fourth District   No. 4—92—0196

Opinion filed December 30, 1992.—Rehearing denied January 11, 1993.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial, David Sams was convicted of theft over $100,000 (Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(a)(1), (b)(6)), sentenced to 13 years' imprisonment, and ordered to pay restitution of $1.7 million. On appeal, defendant contends the court (1) abused its discretion in sentencing him to 13 years' imprisonment; (2) erred in ordering him to pay restitution because theft is not a crime of violence and, in the alternative, (3) abused its discretion in ordering him to pay restitution within five years, while sentencing him to 13 years' imprisonment.

Defendant was employed for 16 years as a scale house operator at Mervis Industries, a scrap metal and steel business in Danville, Illinois. He was responsible for using an electronic scale to weigh incoming shipments and was given $11,000 each day to pay vendors who sold scrap metal to the company. At some point, defendant learned to manipulate the electronic scale to produce a ticket without any vehicle crossing it. He would then sign the name of either an actual or fictitious vendor and pocket the cash. After defendant's arrest, a complete audit going back to 1985 revealed falsely generated tickets totaling in excess of $1,780,000.

Evidence revealed that defendant had used the money to supplement his wholesale foods business. Among other things, he had purchased five refrigeration trucks in which to haul perishable food. His employer filed suit against him and filed orders of attachment for his assets. A fleet of 27 vehicles was seized. Defendant's personal and financial records revealed that he had purchased a satellite dish and installed a swimming pool for his home. He also purchased several mobile telephones, seven computers, and paid for trips that he and his wife, and other couples, took to Florida and Hawaii.

During this time defendant failed to pay his bills, forcing his creditors to recoup their losses by taking possession of any available collateral. He had two mortgages on his home and a $50,000 loan for his wholesale foods business; he had issued bad checks to his business creditors, and had not paid his quarterly taxes. Defendant maintained that 90% of the funds stolen from his employer were siphoned into his business, with the other 10% used for personal items. However, an audit of his wholesale foods business revealed that no more than

$500,000 of the $1.7 million he stole could be traced to assets of the business. The First National Bank of Danville had taken possession of the business assets as part of its security agreement with defendant.

Mervis Industries obtained a judgment against defendant for damages in the amount of $1,785,000, plus interest, and punitive damages of $3,570,000, but was unable to enforce the judgment because defendant's discoverable assets were already subject to liens by other creditors. In the course of negotiations with defendant, Mervis Industries offered to speak on defendant's behalf at sentencing and refrain from blacklisting him with other employers if he would produce the remainder of the stolen funds and reveal whether anyone else was involved in the scheme. Defendant responded that he needed time to think about this proposal. Later, he and his counsel stated that no one else was involved and he was unwilling to disclose the whereabouts of the rest of the money.

Defendant argues that the trial court abused its discretion in sentencing him to 13 years' imprisonment. Defendant contends the court never adequately considered a number of mitigating factors such as (1) his expression of remorse; (2) his lack of prior record; (3) his cooperation with authorities by admitting the theft; (4) the fact that his conduct neither caused nor threatened violence; (5) a lengthy prison sentence would be counterproductive to his rehabilitation and would impose a financial hardship upon his wife and children; (6) he is an excellent candidate for probation; and (7) his character and attitude indicate he is unlikely to commit another crime. Defendant suggests that under these circumstances, a four-year sentence would be appropriate. Furthermore, assuming defendant receives good-time credit, a four-year sentence would allow for a reasonable restitution order within the statutory five-year time limit. See Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).

■ The trial court's sentencing decision is entitled to great deference and will not be disturbed on review unless it represents an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) The offense was a Class 1 felony, which provides for a sentence of not less than 4 years or more than 15 years' imprisonment. (Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(b)(6), 1005—8—1(a)(4).) A defendant's status as a first offender does not require a court to impose a minimum term of imprisonment. (*People v. Lafferty* (1990), 207 Ill. App. 3d 136, 139, 565 N.E.2d 279, 281.) The court noted the premeditated nature of the crime and the fact that the scheme was carried out over a number of years. The crime was extraordinary, not only because of the enormous amount of funds stolen but also because

it was carried out on an almost daily basis over a number of years. The maximum sentence was not given. We find no abuse of discretion in the trial court's sentencing decision.

Next, defendant contends the trial court erred in ordering him to pay $1.7 million in restitution for his offense of theft. Section 5—5—6(b) of the Unified Code of Corrections (Code) provides that "the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the *victim*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(b).) The definition of "victim" in section 5—1—22 of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 1005—1—22) incorporates the definition contained in section 3(a) of the Bill of Rights For Victims and Witnesses of Violent Crime Act (Act), which states, in relevant part:

> " 'Victim' means (1) a person physically injured in this State as a result of a violent crime perpetrated or attempted against that person or (2) a person who suffers injury to or loss of property as a result of a violent crime perpetrated or attempted against that person or *** (4) any person against whom a violent crime has been committed ***." Ill. Rev. Stat. 1991, ch. 38, par. 1403(a).

As his theft from Mervis Industries was not a crime of violence, defendant argues the trial court erred in ordering restitution. The State counters that this claim has been waived by defendant's suggestion at sentencing hearing that restitution was a proper form of punishment. Citing *People v. Early* (1987), 158 Ill. App. 3d 232, 511 N.E.2d 847, and *People v. Eades* (1984), 123 Ill. App. 3d 113, 462 N.E.2d 819, the State argues that defendant should not be permitted to complain of an error in which he acquiesced or which he invited. In both these cases, defendant had agreed with the State on the actual amount of restitution that was eventually ordered. In the case at hand, defense counsel, while suggesting some amount of restitution, explicitly questioned the amount of money claimed to have been stolen. We find no waiver of this issue.

Defendant cites decisions of the Second and Fifth District Appellate Courts for the principle that restitution is only available for victims of violent crimes. (*People v. Stocke* (1991), 212 Ill. App. 3d 547, 571 N.E.2d 192; *In re D.R.* (1991), 219 Ill. App. 3d 13, 579 N.E.2d 409.) Our supreme court has declined to accept this limitation on a court's authority to order restitution. *People v. Nasser* (1991), 223 Ill. App. 3d 400, 584 N.E.2d 1010, *aff'd sub nom. People v. Lowe* (1992), 153 Ill. 2d 195, 200.

■ Finally, defendant claims ordering that restitution of $1.7 million be paid within the maximum five-year period constitutes an abuse of discretion where he was sentenced to 13 years' imprisonment. Section 5—5—6(f) of the Code requires the sentencing court to fix a period of time "not in excess of 5 years within which payment of restitution is to be paid in full." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).) Although it is not necessary for a trial court to determine a defendant's ability to pay restitution, the trial court must consider the defendant's ability to pay when making a determination of the method and time of payment. (*People v. Fuzz* (1991), 218 Ill. App. 3d 418, 422, 578 N.E.2d 294, 297.) Defendant's home and property have been lost to foreclosure, and he owns no vehicle. At the time of his arrest, he was earning only $22,000 per year. Assuming that he obtains a similar position, and assuming he is not in jail during the entire five-year period, defendant argues it would still be impossible to pay $1.7 million in restitution. Defendant cites *People v. Knowles* (1980), 92 Ill. App. 3d 537, 414 N.E.2d 1322, for the principle that the purpose of restitution is frustrated when the restitution order imposes an impossible financial burden.

Substantial evidence was heard that defendant had stolen funds in an amount exceeding $1.7 million. Yet, only $500,000 of this amount is traceable to investment in his wholesale food business. Defendant has not accounted for the remaining balance of $1.2 million. Perhaps most significant is the fact that defendant's employer offered to speak on his behalf at sentencing if he would provide information regarding the whereabouts of the remaining money. This offer was declined. We find no abuse of discretion in the order for restitution.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.