THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CASEY W. JONES, Defendant-Appellant.

Third District   No. 3—87—0847

Opinion filed November 15, 1988.—Rehearing denied December 29, 1988.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Stephen Reed, State's Attorney, of Oquawka, and Gallagher, Fuenty & Klein, of De Kalb (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, and Howard R. Wertz, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the circuit court of Henderson County found the defendant, Casey Jones, guilty of one count of battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—3(a)(1)) and one count of aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(a)). The court entered a judgment of conditional discharge, requiring the defendant to spend 14 days in the county jail and to forfeit the rest of his bail bond money to the victim, Todd Scanlon, as restitution. The court also reserved the question of the defendant's ability to pay additional restitution for a status check in six months.

Several witnesses testified about the incident which gave rise to this case. For the State, Darren Brown testified that he and Jeanette McBride went on a double date with Todd Scanlon and Denise Miller.

During the date Jeanette became angry, and the girls departed on foot. Attempting to find the girls, Todd and Darren drove to Jeanette's house and then to Denise's house.

They arrived at Denise's house at about 10 p.m., and Denise's brother, Ben Miller, met Todd and Darren outside and told them that the girls were not at the house. Despite the fact that Darren was told a year earlier not to enter the house and over Ben's objection, Darren proceeded to go into the house. Todd stayed outside and talked to Ben.

Inside the house, Darren found Kassie Carpenter, who was baby-sitting Denise's baby. The two proceeded into the kitchen, where the baby was seated at the table next to the defendant, Casey Jones. Darren walked over to the table and "just kind of tickled" the baby under the chin and said "cute little shit" or words to that effect. Casey, who was seated to the left of Darren, told Darren twice to back away. When he started to back off, Casey stood and shoved Darren into the wall and trash can. Darren then saw Todd come into the room and extend his arm towards Casey's right shoulder. Casey struck Todd twice, knocked Todd to the floor, and struck him again. Darren fled. When Darren returned, he found Todd sitting in a chair and bleeding. With two others, Dale Leary and Joe Foust, Darren assisted Todd into the car. Casey came out to the car and apologized to Todd. Casey and Todd shook hands, and Todd said it was okay.

Dale Leary testified that he was outside when Todd and Darren arrived. Dale had come to Denise's house earlier with the defendant and Joe Foust. Dale was talking to Todd outside when Joe came to the door and said that there was a problem inside. Dale followed Todd into the house. Dale heard Darren and Casey arguing, and he saw Casey push Darren. Dale then saw Todd grab Casey. Casey turned around and swung at Todd, and the two wrestled to the floor. Slapping Casey on the back, Dale told Casey to stop. Casey then arose and left the room, his muscle shirt torn on the left side. When Todd was taken out to the car, Dale heard Todd admit to Casey that the incident was his own fault, that he was sorry, and that Casey should not worry about it.

The parties stipulated that if called to testify, Ben Miller and Kassie Carpenter would testify in accordance with statements which they gave to the police. Both Ben and Kassie indicated that they were in the kitchen when Darren walked in and said "you cute little shit" to the baby. Ben saw Darren nudge the baby under the chin. Both Ben and Kassie saw that Darren was standing close to Casey, heard Casey tell Darren to back up, saw Casey push Darren, Todd grab Casey on

the shoulder, and Casey hit Todd.

Denise testified that she had been dating Casey and knew that he would be at her house when she returned from her double date. She stated that Jeanette and Darren had a fight, so she and Jeanette decided to walk home. Upon her arrival, she learned that there had been a problem. Todd was sitting in a chair in the kitchen, where he remained for about one-half hour. When Todd was in the car, Denise heard Casey apologize about the incident and heard Todd tell Casey that it was his own fault.

Todd testified that when he walked into the kitchen towards Darren, he did not see the defendant. He saw someone come at him from his right side and hit him several times before he fell to the floor, where he was hit again. He did not remember raising his arms at anyone, except as a reflex to defend himself. When he was sitting in the car, Casey came out and apologized. He and Casey shook hands, but Todd did not tell Casey that the incident was his own fault.

Dr. Bruce Bobofchak, the oral surgeon who treated Todd, indicated that Todd's jaw had been broken in two places.

Casey testified on his own behalf that he had arranged to meet Denise at her house on the night of the incident. He arrived to find that Denise was still on her date with someone else. As he sat in the kitchen with Kassie and Denise's baby, he heard a voice say, "cute little fuckin' shit" and saw a hand reach out and nudge the baby's chin. He was startled and looked up at the person, who was standing next to Casey, almost touching him and giving him a dirty look. Casey asked the person to back off, and when the person refused, Casey gave him a push. Casey then felt someone grab him on the left shoulder and spin him around. Casey had no peripheral vision at the time, but he saw a clenched fist. Casey thought that he was in danger, so he swung at the person several times and wrestled him to the floor. Casey later went out to the car to speak with Todd, whom he had hit. Casey apologized, and Todd admitted that the incident was his own fault. Casey suffered a bruised shoulder.

Dale Leary and Joe Faust testified for the defense that Casey did not hit Todd while he was on the floor. Joe further testified that the kitchen was poorly lit and that Todd apologized to Casey, admitting that the incident was his own fault.

The defendant raises two issues in this appeal. He argues first that the State failed to establish beyond a reasonable doubt that he did not act in self-defense. Second, he argues that the trial court exceeded its sentencing authority in reserving to a future date a determination of the defendant's ability to make restitution payments. We

affirm the conviction, but we reverse and remand that part of the judgment ordering additional restitution following the status check of the defendant's ability to pay.

■ When a defendant presents some evidence of self-defense, the State must disprove the defense beyond a reasonable doubt. (See Ill. Rev. Stat. 1987, ch. 38, par. 3—2; *People v. Estes* (1984), 127 Ill. App. 3d 642, 651, 469 N.E.2d 275, 282.) The test to be applied is whether the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of the defendant's perception of the situation at the time he employed force against his aggressor. (*Estes,* 127 Ill. App. 3d at 651, 469 N.E.2d at 282-83.) The defendant must show that he was not the aggressor, that he was confronted with the threat of imminent, unlawful force, that the use of force was necessary to avert the danger, and that the amount of force used was justified under the circumstances. *People v. Jaffe* (1986), 145 Ill. App. 3d 840, 852, 493 N.E.2d 600, 609.

The defendant argues that the testimony of several witnesses suggests that Todd Scanlon was the aggressor. He argues further that he reasonably believed that force was necessary because he had been thrown off balance and was about to be struck by Todd's fist. He asserts that the amount of force used in striking Todd was "measured" and "necessary," and that his impaired vision made the situation particularly intimidating.

■ We agree with the defendant that there is testimony suggesting that he acted in self-defense. We note, however, that there is also testimony suggesting otherwise. In view of the conflicting testimony, the proper determination of the circumstances is made only by assessing the credibility of the testimony. The supreme court of Illinois has stated that

> "[w]here a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge [citations] and unless it can be said the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable. (*People v. West* (1958), 15 Ill. 2d 171, 176, 154 N.E.2d 286, 289.)

Additionally, questions as to the reasonableness of a defendant's resort to force and the amount of force used are particularly within the province of the trier of fact. *People v. Conwell* (1978), 64 Ill. App. 3d

995, 1000, 382 N.E.2d 64, 68.

In this case it cannot be said that the trial court's determination rested on doubtful, improbable, unsatisfactory or clearly insufficient evidence. Even supposing that Casey subjectively believed himself to be in danger, there is sufficient evidence to suggest that his belief was not reasonable under the circumstances. Darren had made neither physical nor verbal threats to Casey or anyone else when Casey shoved him into the wall. Todd testified that he had merely walked into the kitchen when Casey proceeded to assault him. Furthermore, though the defendant says that the amount of "in kind" force was "measured" and "necessary," the result of the incident—Todd bleeding, with his jaw broken in two places, and Casey with a bruise and a torn muscle shirt—is a rather weighty indication that the amount of force used against Todd was needlessly excessive.

Our role as a reviewing court is, considering all of the evidence in the light most favorable to the prosecution, to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) In view of these principles, we hold that there was sufficient evidence for the trial court to find beyond a reasonable doubt that Casey Jones was not acting in self-defense. Accordingly, we affirm the conviction.

The State argues that the defendant waived the issue regarding the restitution order. This court has held, however, that a party may at any time challenge a sentencing order on the ground that it is void, *i.e.*, the order was entered outside the sentencing authority of the trial court. (*People v. Evans* (1984), 122 Ill. App. 3d 733, 740, 461 N.E.2d 634, 639; see also *People v. Winchell* (1986), 140 Ill. App. 3d 244, 247, 488 N.E.2d 620, 622; *People v. Daugherty* (1982), 104 Ill. App. 3d 89, 92, 432 N.E.2d 391, 394.) Thus, we are not prevented by the waiver argument from assessing the validity of the order.

We have reviewed section 5—5—6 of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6) and conclude that it does not permit a sentencing court to reserve a determination of the defendant's ability to pay restitution for a date beyond that of the sentencing hearing. The statute provides, in pertinent part, that "the court shall *at the sentence hearing* determine whether restitution is an appropriate sentence to be imposed." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6.) Again, it states that "[a]t *the sentence hearing*, the court shall determine

whether *** the defendant should be required to make restitution." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6 (a).) The only occasion for the court to consider the defendant's ability to pay arises when the court is determining whether the restitution should be paid in one payment or in installment payments. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f); see also *People v. Rupert* (1986), 148 Ill. App. 3d 27, 29, 499 N.E.2d 93, 95.) The Code does permit the court to modify the sentence of restitution, but only where the defendant either fails to pay restitution as ordered by the court or commits another offense. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6.

■■ In this case, there is no evidence that the defendant did anything to invoke the sentencing court's modification power under section 5—5—6 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6). Thus, there was no basis for the sentencing court in this case to reserve for a future date a determination of payment of additional restitution. If the sentencing court deemed restitution appropriate, it should have set a definite amount of restitution to be paid at the sentencing hearing. (*People v. White* (1986), 146 Ill. App. 3d 998, 1003, 497 N.E.2d 888, 891.) To the extent that the sentencing court postponed the determination of additional restitution, the sentencing order is reversed.

The State asserts that victims in the Third District are at a disadvantage since this court in *People v. Johnson* (1982), 106 Ill. App. 3d 171, 435 N.E.2d 799, and *People v. Morrison* (1983), 114 Ill. App. 3d 828, 449 N.E.2d 859, unlike other districts, requires the trial court to determine the financial capacity of a defendant to pay restitution before determining the amount of restitution to be paid. We simply note that those cases were decided under a version of the Unified Code of Corrections which has since been modified. *Cf.* Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—6, with Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6.

In remanding this matter to the trial court, we instruct it to determine, first, whether additional restitution is appropriate, and, if so, then determine whether the additional restitution should be paid in one payment or in installment payments in accordance with the Code. See Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f).

Accordingly, the decision of the circuit court of Henderson County is affirmed in part and reversed in part and remanded.

*Affirmed in part; reversed in part and remanded.*

BARRY and HEIPLE, JJ., concur.