THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CORY S. FISHER, Defendant-Appellant.

Fourth District   No. 4—88—0600

Opinion filed April 28, 1989.—Modified on denial of rehearing August 24, 1989.

Steven Skelton, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant Cory Fisher was charged with two counts of first degree murder and one count of aggravated battery. A jury found defendant guilty of second degree murder. He was sentenced to 15 years' imprisonment and ordered to pay $13,582 restitution within two years after his release from prison. On appeal, defendant questions the propriety of his sentence. Defendant argues the trial court considered improper aggravating factors in sentencing him to 15 years' imprisonment; the trial court erroneously sentenced defendant to the maximum term of imprisonment allowed by statute; and the trial court erroneously ordered defendant to pay restitution to the victim's mother.

The record on appeal consists of the common law record, transcripts of the July 4, 1988, hearing held on the post-trial motion and for sentencing, and the exhibits presented at the sentencing hearing. The record on appeal does not contain any transcripts from the six-day jury trial.

The facts are as they were related by the trial court at the sentencing hearing. The incident which led to defendant's conviction occurred on November 3, 1987, at a Burger King restaurant during the noon hour. Defendant, a student at Normal Community High School, brought his grandfather's .357 magnum handgun to school with him that day, because he had experienced difficulties with some students

and felt he was not receiving any help from adults with this problem. Defendant sat at a picnic table outside the Burger King, the victim approached defendant, some words were exchanged, and defendant pulled the gun and backed the victim into the restaurant. Defendant then shot and injured the victim. Defendant pursued the fleeing victim, who cowered and tried to protect himself. According to the trial court, defendant then stated "Now, it is time to die," and "That will teach you to mess with me," and shot the victim a second time. The victim attempted to flee again and defendant shot him a third and final time. In addition, a bullet fragment injured a Burger King employee.

Defendant filed a post-trial motion for a judgment notwithstanding the verdict and, in the alternative, for a new trial which basically alleged failure to prove guilt beyond a reasonable doubt, among other claims, but failed to argue any of the issues which are now on appeal. The trial court denied the motion at the sentencing hearing. The court next stated it would consider the following before imposing sentence: a presentence investigation report, an intensive probation supervision report, a forensic report by Dr. Robert Chapman dated May 26, 1988, McLean County Center for Human Services contact notes filed June 23, 1988, and a victim response letter from the victim's mother dated June 23, 1988, with medical and hospital bills attached thereto. The court also stated it would consider all but one letter submitted by relatives and acquaintances of defendant.

The State called Mary Johnson to testify. Johnson stated that she is the victim's great aunt and had adopted the victim approximately three years before the hearing. Mrs. Johnson also gave a brief statement concerning the effect of the loss of her son.

Defendant called Melinda Fellner, an inmate counselor for the McLean County sheriff's department. Fellner testified to defendant's behavior during his incarceration since the date of the incident. She stated that there had been no reports or incidents of disciplinary proceedings against defendant since his incarceration on November 3, 1987. She said defendant was polite and had obtained a general equivalency diploma in February 1988. She said defendant was a subdued and quiet inmate, and he asked for counseling on occasion when suffering from anxiety or depression.

The court admitted, on defense counsel's motion, a letter from Dr. Chapman to defense counsel dated July 12, 1988. Dr. Chapman was then called to testify on behalf of defendant. The court took notice of earlier evidentiary proceedings relating to Dr. Chapman's qualifications as a psychiatrist and expert witness. Dr. Chapman stated he had

examined defendant on three occasions and concluded defendant suffered from a personality disorder. Dr. Chapman also gave a tentative diagnosis of post-traumatic stress disorder, a psychological and physiological reaction to stress beyond the common human experience triggered by the incident on November 3, 1987. Dr. Chapman stated that without treatment defendant's personality was unlikely to change and as he matured it might take a different form, adult avoidance personality. Without treatment, according to Dr. Chapman, the post-traumatic stress syndrome would resolve itself within two years.

Dr. Chapman stated the optimum treatment for defendant would consist of defendant residing elsewhere than Bloomington and defendant obtaining individual psychotherapy or counseling by a professional or under the supervision of a psychiatrist. Dr. Chapman thought defendant should have rehabilitation training including the development of vocational skills, assertiveness training, social skills training, and training in the skills of independent living directed toward developing independence and self-sustaining discipline. Dr. Chapman estimated a 75% successful prognosis rate.

Dr. Chapman stated that defendant was not sophisticated about what he wanted and which goals were appropriate for him. Defendant expressed to Dr. Chapman that he hoped to develop better communication skills and hoped to eliminate persistent nightmares. According to Dr. Chapman, a successful completion of the treatment would result in defendant functioning in a viable sense within a community and within society in terms of being employed and contributing in a societal sense. While stating that he understood vocational and college training is available in the Department of Corrections, Dr. Chapman testified that incarceration in the Department of Corrections would be detrimental to defendant's health. Dr. Chapman testified that the personality disorder which defendant is suffering played a role in the choices he made and the acts he performed on November 3, 1987, in a most indirect manner.

Patty MacEwan, defendant's mother, also testified on defendant's behalf. She stated that defendant has been very passive throughout his life and is sincere in expressing remorse for his actions. She stated defendant has an older brother in Florida who had wholeheartedly agreed to accept defendant into his home. She felt her son had grown and matured while imprisoned during the previous eight months and had a better ability to ask for help and deal with problems in a realistic manner. She felt defendant would easily comply with severe and restrictive probation conditions. She requested that defendant be placed on probation.

The State's Attorney then presented his argument. The State's Attorney stated that he believed no factor in mitigation existed. The State's Attorney stated factors in aggravation he thought were particularly important for the court to consider were the defendant's conduct caused or threatened serious physical harm, and a sentence is necessary to deter others from committing the same crime. Defense counsel made his statement to the court, said he believed 8 of the 12 factors in mitigation from section 5—5—3.1 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1) apply to this case, he said deterrence of others was inapplicable, and he recommended probation. Defendant also made a statement.

Before giving the sentence, the trial court stated it had considered the evidence at the trial, the presentence investigation report, the letters submitted to the court, the testimony presented at the sentencing hearing, arguments of counsel, and the statement of defendant. We note the trial court also referred to evidence that defendant had experienced problems with blacks. The court stated as follows:

> "Cory had psychological injuries dating back to a few days before and years of problems mostly with blacks. That is the testimony in the case. Unrebutted by everyone that Cory's physical altercations, as passive as he was, were repetitive throughout the years and tending to be with blacks."

We also note that defense counsel objected to the court's statement as a misstatement of the facts. The record indicates the victim was black and defendant is white.

The trial court then considered the following factors in mitigation: (1) defendant acted under strong provocation; (2) there were no substantial grounds to excuse defendant's conduct; (3) defendant's conduct was not facilitated or induced by someone other than defendant; (4) defendant had no history of prior delinquency or criminal activity and he led a law-abiding life for a substantial period of time; (5) whether the result of the circumstances was unlikely to reoccur, concluding: "I am not so sure"; and (6) defendant was probably unlikely to commit another crime.

The trial court also considered two factors in aggravation. First, the court stated: "Did his conduct cause or threaten serious physical harm? Yes, it did. The victim died." The court also concluded deterrence was an aggravating factor in this case. The trial court then sentenced defendant to 15 years' imprisonment and ordered him to pay $13,582 restitution within two years of his release from prison. The trial court stated it would recommend to the Department of Corrections that defendant be placed in a facility other than a maximum se-

curity penitentiary. On July 15, 1988, the trial judge sent a letter to the Department of Corrections which recommended that defendant be placed in a minimum or medium security penitentiary. Mittimus was issued that same day. Defendant filed timely notice of appeal on August 15, 1988.

We initially consider a motion filed by the State to strike portions of defendant's appellate brief. The State argues defendant's statement of facts in his brief refers to trial testimony not found in the record. Defendant's statement of facts refers to the record only in its final paragraph, which refers to the sentencing hearing, but does not cite to any pages in the record. Supreme Court Rule 341(e)(6) (107 Ill. 2d R. 341(e)(6)) states that the statement of facts portions of appellate briefs shall contain necessary facts with reference to the pages of the record on appeal. In addition, the court in *Finance America Commercial Corp. v. Econo Coach, Inc.* (1981), 95 Ill. App. 3d 185, 186, 419 N.E.2d 935, 937, stated that portions of an appellate brief's statement of facts unsupported by the record are not considered on appeal.

The State also notes that defendant, on page nine in the argument portion of his brief, asserts: "The evidence introduced at trial and the sentencing hearing was consistent." The State argues that this violates Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), which states that the argument portion of an appellate brief shall contain citation of the pages of the record relied on. The State also cites *Kankakee Concrete Products Corp. v. Mans* (1980), 81 Ill. App. 3d 53, 58-59, 400 N.E.2d 637, 640-41, where the appellate court was unable to decide the appellant's claim that its due process rights were violated by the trial court's refusal to accept testimony at a hearing because the appellate court was not supplied a transcript of the proceedings. The court stated it is the appellant's duty to supply such transcripts.

Defendant argues his brief is in compliance with Rule 341, and if not, he would like to amend his brief. Defendant cites no authority for either contention and none can be found. The majority of defendant's statement of facts refers to trial testimony which is not found in the record, and we will not consider that portion of the statement of facts. At the sentencing hearing, the trial court mentioned several facts which were adduced at the trial. These facts are sufficient for the disposition of the issues raised on appeal. Also, the State's statement of facts in its brief adequately presents the facts of the case. Furthermore, we will not consider the portion of defendant's argument which mentions the trial; however, we will consider the portion which refers to the sentencing hearing. Therefore, the State's

motion is allowed in part and denied in part.

■ We turn now to the question of whether the trial court considered improper aggravating factors in sentencing defendant to 15 years' imprisonment. We note section 5—5—3.1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1) provides 12 factors in mitigation that shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment. We also note the trial court explicitly stated that it considered six of these factors and three apply to this case.

Section 5—5—3.2 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2) provides 13 factors which shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence. The trial court determined two of the factors applied in this case. Those factors are that the defendant's conduct caused or threatened serious harm and that the sentence is necessary to deter others from committing the same crime.

Defendant argues conviction of second degree murder necessarily includes a consideration that the victim died. Therefore, defendant concludes, it is improper for a trial court to consider the death of the victim as an aggravating factor, because it would result in double punishment for the victim's death. In *People v. Martin* (1988), 119 Ill. 2d 453, 519 N.E.2d 884, the supreme court held that serious harm is implicit in an involuntary manslaughter conviction. The court also stated the legislature would have clearly expressed any intent that death be considered twice in a conviction for involuntary manslaughter. (*Martin*, 119 Ill. 2d at 460, 519 N.E.2d at 887.) We conclude the *Martin* rule applies to a conviction for second degree murder.

However, in *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, where the court held the victim's death could not be considered as an aggravating factor in a conviction for voluntary manslaughter, the court stated:

> "While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphasis in original.) *Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.

In clarification, the supreme court stated, although it referred only to voluntary manslaughter convictions, that a trial court may ap-

ply the aggravating factor that defendant's conduct caused serious harm to the victim for the purpose of considering the force employed and the physical manner in which the victim's death was brought about, as well as the nature and circumstances of the offense. (*Saldivar*, 113 Ill. 2d at 271, 497 N.E.2d at 1144.) In *Saldivar*, the defendant was persuaded to accompany the victim to the victim's trailer home on the victim's false representation that a party was taking place at the trailer. When the two arrived at the trailer, the victim made a homosexual advance on the defendant. The defendant refused the victim's advance, a struggle ensued, and defendant stabbed the victim twice with a kitchen knife.

In *Saldivar*, the court did not find that the trial court's finding in aggravation was directed at the degree of gravity of the defendant's conduct, the force employed and the physical manner in which the victim's death was brought about, or the nature and circumstances of the offense; rather, the supreme court found the trial court focused primarily on the end result of the defendant's conduct, death of the victim. The trial court stated: " 'The number one factor in aggravation—there are some that come to a lesser degree, but the one that is probably the most serious is the terrible harm that was caused to the victim. And the victim is dead today.' " *Saldivar*, 113 Ill. 2d at 272, 497 N.E.2d at 1144.

In *Martin*, the court also found the trial court improperly considered the victim's death as an aggravating factor in sentencing the defendant. Significantly, however, the court said, in language similar to that used in *Saldivar*, the degree of force might justify an increased sentence even though death is implicit in the offense. (*Martin*, 119 Ill. 2d at 461, 519 N.E.2d at 888.) In *Martin*, the victim and two friends entered a massage parlor in a drunken state. The manager asked the group to leave and two of the three left. One did not, however, and engaged in a pushing match with the manager of the massage parlor. The victim observed this, ran back inside the parlor, and a fight broke out. During the fight, the manager instructed the defendant, who was standing nearby, to get a shotgun. The defendant retrieved the gun and brought it back to the scene of the fight. The gun discharged, killing the victim.

In the case at bar, unlike *Martin* and *Saldivar*, we have an intentional killing. In addition, the force employed and the physical manner in which the victim's death was brought about were factors which the trial court took into consideration, as explicitly reflected at several points in the record. Defendant brought his grandfather's .357 magnum to school one day, waited at a picnic table during lunch hour until

the victim approached him, shot the victim once, pursued the victim, told the victim he was going to die and this would teach the victim not to mess with defendant, defendant shot the victim again, and defendant shot the victim a third time as the victim attempted to flee. In *People v. Killings* (1986), 150 Ill. App. 3d 900, 910, 501 N.E.2d 1363, 1369, this court stated that the act by a defendant of carrying a gun and deliberately shooting the victim at point-blank range may be considered as an aggravating factor.

An additional factor the trial court mentioned at the sentencing hearing is the credit available to an inmate who exhibits good behavior in prison. Defendant argues this was an improperly considered factor in aggravation. The record reflects the State's Attorney stated a 15-year prison term "contemplates 7½ years of actual confinement." Defense counsel's objection that contemplation does not necessarily result in reality was overruled. Later the trial court mentioned the principle of good-time credit on several occasions, but the record reflects these references were made in passing and not listed with the two aggravating factors the court determined applicable in this case. Even if the trial court considered good-time credit as an aggravating factor, in *People v. Smith* (1986), 148 Ill. App. 3d 655, 657, 499 N.E.2d 1038, 1039, this court found that good-time credit available to a defendant is a permissible consideration in sentencing.

We conclude the trial court did not consider the death of the victim as an aggravating factor at the sentencing hearing, but instead properly considered the physical manner and the degree of force with which the victim's death was brought about. In view of our holding, we deem it unnecessary to address the State's waiver argument on this issue.

■ We turn now to the question of whether the trial court erroneously sentenced defendant to the maximum term of imprisonment allowed by statute. Second degree murder is defined at section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—2) as a Class 1 felony. Section 5—8—1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1) states that the sentence for a Class 1 felony shall be not less than 4 years' and not more than 15 years' imprisonment. In addition, the Illinois Constitution provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) We note that under this provision a trial court is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. *People v. Partin* (1987), 156 Ill. App. 3d 365, 373, 509 N.E.2d 662, 666-67.

■■ ■ The determination and imposition of a sentence is a matter involving considerable judicial discretion, and the sentence will not be disturbed on review in the absence of an abuse of discretion by the trial court. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The sentence must be based on the particular circumstances of each individual case. (*Saldivar*, 113 Ill. 2d at 268, 497 N.E.2d at 1143.) This judgment depends on many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) The nature and circumstances of the offense has also been included as a governing factor to be used in determining a sentence. (*People v. Moffitt* (1985), 138 Ill. App. 3d 106, 115, 485 N.E.2d 513, 520.) The trial court has the opportunity to consider these factors and this opportunity is superior to the record provided to a reviewing court. *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.

Defendant urges us to follow the holding in *People v. Horton* (1976), 43 Ill. App. 3d 150, 356 N.E.2d 1044. In *Horton*, the defendant was convicted of murder and given 25 to 50 years' imprisonment. At the time of the offense, the defendant was 17 years old and had no prior criminal record. The sentence severely diminished the possibility of defendant's rehabilitation, according to the appellate court, because the proper objective in determining the extent and nature of a criminal penalty is the restoration of the offender to useful citizenship. In *Horton*, the defendant hid in a gangway between two garages and shot the victim with a shotgun from the gangway. Also, an accomplice shot the victim. The defendant stepped out of the gangway, stepped back, and a third shot was fired. The defendant then fled from the scene. While the *Horton* case has some similarities to the case before us, and the defendant in *Horton* arguably used excessive force, the physical manner and the degree of force used was of greater magnitude in the case at bar.

■■ The State urges us to follow the holdings of *Killings*, *People v. White* (1986), 114 Ill. 2d 61, 499 N.E.2d 467, and *People v. Bourke* (1983), 96 Ill. 2d 327, 449 N.E.2d 1338, which were cases where improper aggravating factors were considered but the reviewing courts found in each case that the weight given the improper factor was insignificant and it did not result in a greater sentence. Although defendant was given the maximum term of imprisonment allowed by statute, the trial court properly considered that the victim's death was brought about in an excessive physical manner and with an excessive degree of force as an aggravating factor. In addition, there was

evidence that defendant had a history of physical altercations with black youths. Given the trial court's discretion in sentencing, we conclude the prison term here was not an abuse of the trial court's discretion.

We turn now to the question of whether the trial court erroneously ordered defendant to pay the victim's mother restitution within two years of his return from prison. The State argues defendant waived consideration of this issue on appeal. This court has held that failure to object to alleged errors in the imposition of restitution at the sentencing hearing may waive consideration of the matter on appeal. (*People v. Eades* (1984), 123 Ill. App. 3d 113, 462 N.E.2d 819.) However, in *People v. Jones* (1988), 176 Ill. App. 3d 460, 465, 531 N.E.2d 88, 92, the court stated a party may at any time challenge a sentencing order as void because it was entered outside the sentencing authority of the trial court. Thus, we may assess the validity of the order for restitution on this appeal.

Defendant argues the trial court did not consider his ability to pay restitution and that, therefore, the restitution is improper. Section 5—5—6(f) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(f)) provides:

> "Taking into consideration the ability of the defendant to pay, the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years within which payment of restitution is to be paid in full."

Section 5—5—6(f) requires the restitution to be paid in full within five years. We find the trial court's order that restitution be paid within two years after defendant's release from his 15-year prison term does not comply with the time limit of section 5—5—6(f). (See *People v. Rupert* (1986), 148 Ill. App. 3d 27, 499 N.E.2d 93; *People v. Knowles* (1980), 92 Ill. App. 3d 537, 414 N.E.2d 1322.) The trial court's determination that defendant pay $13,582 in restitution is reversed.

Accordingly, for the reasons stated, the judgment of the circuit court of McLean County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

LUND and GREEN, JJ., concur.