THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STACY A. CHAPIN, Defendant-Appellant.
Third District    No. 3—91—0861

Opinion filed August 13, 1992.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Mark Bernabei, State's Attorney, of Princeton (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

A jury convicted the defendant, Stacy A. Chapin, of theft by deception (Ill. Rev. Stat. 1991, ch. 38, par. 16—1(a)(2)(A)). The trial court subsequently sentenced him to a seven-year extended term of imprisonment. The defendant appeals.

The record shows that 83-year-old Margaret Stuepfert was the victim of a home repair scam. At trial, Stuepfert testified that on the morning of June 17, 1991, she was backing out of her driveway when two men drove up in a pickup truck. From photographs introduced into evidence, Stuepfert identified the defendant as the passenger and Charles Herrin as the driver. Herrin exited and asked her about doing a blacktop job. Stuepfert told him that she did not want to spend any money. After he "pressured" her a little more, she told him they could do a small area in front of her garage where water would stand after a rain. She then left to do errands. When she returned about an hour later, she saw several men with equipment working on her driveway.

Stuepfert told them not to do any more work as they had done more than she wanted. Herrin told her that they had to use the entire load of blacktop. Stuepfert again felt pressured and went inside. When they finished, the defendant and Herrin spoke to her. Herrin told her she owed them $7,000. After she told him he was crazy, Herrin lowered the price to $6,000. He then filled out an agreement which Stuepfert signed. The defendant also inserted his name as payee on the check Stuepfert signed. After they left, Stuepfert received a call from a teller at her bank. She gave permission for the check to be cashed.

Four days later, on June 21, 1991, the defendant and Herrin returned to Stuepfert's home. They asked her whether she had called the police. Stuepfert replied that she had not. Herrin told Stuepfert that her bill was in error and she should have been charged $4,600. He asked her to write a check for that amount and said that he would send her a certified check for the $6,000 she had paid. He filled out a second contract which Stuepfert signed. She then wrote a check for $4,600, again with the defendant as payee. She also authorized the bank teller to cash the check.

When Stuepfert did not receive the refund check, she sent a letter to an address the defendant had given her. One of the men called in response to her letter of complaint. He told her that they were busy but would be back in the area to apply sealant to her driveway. During the telephone call he again asked Stuepfert whether she had called the police. Stuepfert told him she had not. They never returned, and Stuepfert never recovered her money.

Police officer Michael Miroux, the officer who investigated this case, testified that Stuepfert identified a photograph of the defendant as the passenger in the pickup truck and a photograph of Charles Herrin as the driver and the one who did the talking. Miroux also stated that Herrin was presently under arrest in DeSoto, Mississippi, and fighting extradition to Illinois.

Miroux further testified that he interviewed the defendant on July 12, 1991, at the Rock County jail in Janesville, Wisconsin. After waiving his rights, the defendant told Miroux that he owned an asphalt company which employed three or four people. He admitted that he and a man named Joe Sills had gone to Stuepfert's home. Additionally, the defendant acknowledged that Joe Sills was also known as Charles Herrin. The remainder of the story the defendant told Miroux largely corroborated Stuepfert's testimony.

The defendant testified on his own behalf. He denied telling Miroux that Joe Sills and Charles Herrin were the same person. He also denied telling Miroux that he owned an asphalt company. He testified instead that he was employed by an asphalt company from Indiana. According to the defendant, on June 17, 1991, he and Joe Sills, a salesman, went to Stuepfert's home. Charles Herrin, who had been with them earlier, was not there because he had gone to Chicago for materials.

The defendant further stated that he was not present when Sills spoke with Stuepfert. Sills told the defendant that Stuepfert had hired them to fix her driveway. The defendant's job was to take care of the men on the crew. After the job was finished, Sills told Stuep-

fert she owed $7,200. When she complained that the price was high, Sills mentioned a senior citizen's discount and quoted her a price of $6,000. Stuepfert filled out a check for that amount. Sills told Stuepfert that they would be back to put sealer on the driveway. At Sills' direction, the defendant later inserted his name as payee and cashed the check.

According to the defendant, when he presented the check at the bank, the teller called Stuepfert. The defendant spoke with Stuepfert and told her they would be back to seal the driveway after they finished the rest of their work. The defendant also claimed that he gave all of the money to Sills.

The defendant said that he was present four days later when Sills obtained the check for $4,600. Sills subsequently gave the defendant the check, which he again cashed. Sills directed the defendant to write his name, address, and telephone number on the contract in case Stuepfert needed to contact them. The defendant also again gave Sills all the money.

The defendant further testified that he received Stuepfert's letter of complaint on July 1, 1991. He called and told her that they would return in a few weeks after finishing other jobs. However, he could not testify to any of the other jobs by name or address. When asked what jobs he had to tend to after June 21st before they could finish Stuepfert's driveway, the defendant cited jobs in Holland, Michigan, on June 28, and in Kalamazoo, Michigan, on July 1. He then stated that he spoke on the telephone with Stuepfert on July 1, and the Kalamazoo job was just "towards" July 1.

When asked what other jobs he had to do subsequent to June 21, 1991, the defendant responded that he went to Niles with a salesman to collect payment for some asphalt. When the prosecutor asked the defendant what happened there, defense counsel objected on the basis that the questioning was outside the scope of direct examination. The prosecutor countered that everything the defendant did after June 21 was relevant because the defendant had testified that because of other business he could not complete Stuepfert's job. The trial court overruled the objection. The defendant then stated that he had been arrested for extortion in Niles based on an allegation that he had threatened to rip up Zora Kuhl's driveway. The defendant also admitted to being arrested when he tried to cash a check for $1,600. The charge was later reduced to a misdemeanor, and on July 2, 1991, the defendant pled guilty to the offense of being an unlicensed contractor and paid a $100 fine.

Finally, the defendant claimed that the last time he saw Sills was on June 21, 1991. Sills left the motel where they were staying as the defendant slept.

David McDonald, the manager of an asphalt paving company, testified to the poor quality of the work done on Stuepfert's driveway. He estimated that it would cost about $700 to remove the asphalt, and about $2,000 to do the job right. McDonald further stated that it was not possible to do the job properly in two or three hours with two or three workers. He also testified that $10,600 was a vast overcharge for the work performed for Stuepfert.

Ultimately, the jury acquitted the defendant of theft by deception of $6,000, and found him guilty of theft by deception of $4,600. Following the sentencing hearing, the trial court sentenced him to a seven-year extended term of imprisonment.

On appeal, the defendant first argues that the trial court erred in allowing evidence of his arrest for the felony offense of extortion.

Evidence showing that the defendant committed another crime is inadmissible when its purpose is to show the defendant's propensity to commit crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) However, any error in the admission of other crimes evidence may be harmless if overwhelming evidence of the defendant's guilt is introduced. *People v. Gutierrez* (1987), 156 Ill. App. 3d 555, 509 N.E.2d 787.

█ Here, we agree with the defendant's assertion that, even if the evidence were relevant to establish where the defendant was after June 21, 1991, and whether he was working, there was no need to bring out the specific details of the arrest. However, we find that admission of the complained-of evidence was harmless because of the overwhelming evidence of the defendant's guilt.

Stuepfert testified that the men did more work than she had agreed to. The defendant admitted that he was present during all of the "negotiations" with Stuepfert. He filled his name in as payee on Stuepfert's checks, and thereafter immediately cashed them. The amount Stuepfert paid far exceeded the value of the work. Stuepfert also testified that the two men asked her on two occasions whether she had called the police. Furthermore, the defendant was impeached by Miroux's testimony that the defendant had admitted that Joe Sills and Charles Herrin were the same man. The remainder of the story the defendant told Miroux largely corroborated Stuepfert's testimony. Given the overwhelming evidence of the defendant's guilt in the instant case, we find that admission of the complained-of evidence did not constitute reversible error.

The defendant next argues that the trial court improperly sentenced him to a seven-year extended term for his Class 3 felony theft conviction. In support of his argument, the defendant notes that he was convicted of theft by deception of $4,600 from Margaret Stuepfert (Ill. Rev. Stat. 1991, ch. 38, par. 16—1(a)(2)(A)). In pertinent part, the sentencing provision for theft provides:

"(4) *** theft of property exceeding $300 and not exceeding $10,000 in value, is a Class 3 felony.
* * *

(7) Theft by deception, as described by paragraph (2) of subsection (a) of this Section, in which the offender obtained money or property valued at $5,000 or more from a victim 60 years of age or older is a Class 2 felony." Ill. Rev. Stat. 1991, ch. 38, pars. 16—1(b)(4), (b)(7).

A Class 3 felony carries a sentencing range of two to five years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(6).) However, since the victim in this case was over 60, the trial court determined that the defendant was eligible for an extended term of 5 to 10 years, and sentenced him to a seven-year extended term. Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.2(b)(4)(ii), 1005—8—2(a)(5).

■ Here, the defendant points to the anomalous result that would have occurred if he had instead obtained control by deception of $5,000 or more from the same victim. In that case, he would have only been subject to a term of imprisonment of three to seven years if he had been charged under section 16—1(b)(7). (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(5).) He would not have been eligible for an extended term because the statute uses the victim's age to elevate thefts of money or property of $5,000 to $10,000 to Class 2 felonies. Since the victim's age has been used once to enhance the penalty, it could not be used a second time to impose an extended-term sentence.

The defendant concludes that since an extended term based upon the victim's age cannot be imposed for the Class 2 felony, an extended term based upon the victim's age cannot be imposed for the Class 3 felony of which the defendant was convicted. Otherwise, the result would be that theft by deception of $301 from a victim 60 or older could be subject to a maximum term of imprisonment of 10 years if charged as a Class 3 felony, whereas theft by deception of $10,000 from the same victim would be subject to a maximum prison term of seven years if charged as a Class 2 felony. We agree with the defendant's reasoning.

Initially, we note that the State argues that the defendant has waived this issue. We find that he has not waived it because a defend-

ant may challenge a void sentencing order at any time. *People v. Jones* (1988), 176 Ill. App. 3d 460, 531 N.E.2d 88.

We further note that the age of the victim cannot be considered as a factor to impose an extended term sentence where the penalty for the underlying offense has already been enhanced based upon the age of the victim. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 547 N.E.2d 429.) The policy underlying Illinois' constitutional assurances of proportionate penalties and due process (Ill. Const. 1970, art. I, §§2, 11) would be violated if the penalty prescribed for an offense were not as great or greater than the penalty prescribed for a less serious offense. *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512.

In the instant case, since the age factor is already used to enhance thefts between $5,000 and $10,000 from Class 3 to Class 2 felonies, that same age factor cannot be used to impose an extended term for either the Class 2 or the Class 3 offense. To hold otherwise could result in greater penalties being imposed for less serious offenses. Since we find that the defendant received an unauthorized extended-term sentence of seven years, under our appellate powers we reduce his sentence to a nonextended term of five years. 134 Ill. 2d R. 615(b)(4).

The defendant also contends that the trial court erred in ordering him to pay $10,600 in restitution. He notes that $6,000 of the total represented the amount alleged to have been taken in the offense of which he was acquitted. He argues that since he was not convicted of the offense, he should not have been ordered to pay restitution on the charge.

The State counters that the amount of restitution was proper since a trial court may consider all the losses sustained by the victim which were proximately caused by the defendant's conduct. However, the State's argument ignores the possibility that the defendant's acquittal of the charge involving the $6,000 could mean that the jury determined that Stuepfert willingly paid that amount for work the defendant performed.

■ A trial court is not empowered to order restitution of sums extraneous to the charges before it. (*People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.) The instant defendant was convicted only of theft by deception of $4,600 from Stuepfert. We therefore hold that he may only be ordered to make restitution in that amount.

Lastly, the defendant contends that the order of restitution should be vacated because the trial court ordered the payment to be made beyond the five-year statutory period and failed to determine whether

payment should be made in a lump sum or in installments. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).) We note that after imposing the seven-year prison term, the trial court ordered the defendant to pay the full amount of restitution within the term of his mandatory supervised release. The court added the caveat that the amount would be reduced by the amount a co-conspirator, if convicted, would be required to pay.

The relevant portion of the restitution statute reads as follows:

> "(f) Taking into consideration the ability of the defendant to pay, the court shall determine whether restitution shall be paid in a single payment or in installments, and shall fix a period of time not in excess of 5 years within which payment of restitution is to be paid in full." Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f).

Initially, we note that while the court did not define a payment schedule as called for in the above-cited statute, the order called for payment to be made within a definite time following the defendant's release from prison. Given the fact that it would be impossible to determine what the defendant would be earning, or how often he would be paid at that future time, the court's order was reasonable. See *People v. Whitfield* (1986), 146 Ill. App. 3d 322, 496 N.E.2d 743.

Furthermore, we do not read the above-cited statute as requiring restitution to be made within five years of the date of the restitution order. Instead, we interpret it to mean that payment must be made within a five-year period. See *People v. Lambert* (1990), 195 Ill. App. 3d 314, 552 N.E.2d 300.

■ Thus, pursuant to our appellate powers, we shall modify the trial court's restitution order. (134 Ill. 2d R. 615(b)(4).) We order the defendant to make restitution in the reduced amount of $4,600 within five years of the date he is released from prison. That amount shall be reduced by any amount a convicted co-conspirator is ordered to pay.

For all the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed as modified.

Affirmed as modified.

BARRY, P.J., and McCUSKEY, J., concur.