THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE BROOKS, Defendant-Appellant.

Third District   No. 3—91—0747

Opinion filed February 5, 1993.

John J. Hanlon, of State Appellate Defender's Office, of Springfield, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial, the defendant, George Brooks, was found guilty of armed robbery (720 ILCS 5/18—2(a) (West 1992)) and sentenced to serve 10 years in prison.

Shortly after midnight on January, 27, 1991, the owners of a movie rental store in Rock Falls, Illinois, were robbed of the day's proceeds by a man wielding a large knife. On April 25, 1991, the defendant was arrested and questioned by authorities. On appeal, the defendant contends his conviction must be reversed because the trial court erred in allowing in at his trial statements made to the police that day.

Prior to trial the defendant filed a motion to suppress statements he purportedly made in the presence of Officer Terry Anderson shortly after he was brought into the Rock Falls police department. At the hearing on the motion, Anderson testified he met with the defendant at approximately 10:15 a.m. He first advised the defendant of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The defendant initialed and signed a "CONSTITUTIONAL RIGHTS AND WARNING" form.

According to Anderson, after he signed the form, the defendant stated he wanted to speak with his attorney. Anderson told the defendant their conversation was at an end and that he was now going to be booked. Anderson told the defendant he could call his attorney after he was booked or after he was taken to the Whiteside County jail. Anderson testified the defendant then indicated he wanted to continue talking with the officer. The defendant was told he would have to initiate further conversation.

Anderson then went into the hallway to obtain a witness. He saw Christine Beck, the animal control warden, and asked her to step into the interview room. In the presence of the defendant, Anderson explained to Beck what had transpired. The defendant agreed that he wanted to continue talking to Anderson. Beck's testimony at the suppression hearing confirmed Anderson's version of events.

The defendant then made a statement basically denying involvement. According to Anderson, the defendant asked whether armed robbery was a probationable offense. Anderson told him it was not; however, he indicated to the defendant that probation was possible for robbery. Anderson testified, "I said that I couldn't promise him that that's what would happen to him because that was the State's Attorney's call and they would make the decision if the charge was to be reduced or not, and I advised him that his cooperation in the matter was essential and would be considered but I couldn't make that decision. I said that I would speak to the State's Attorney's office in regards to that matter but that I couldn't make any promises in regards to that matter."

Subsequently, Anderson testified, "I advised him that his cooperation was essential in this matter, and that if a reduced charge were to come about, that his cooperation in the matter would be essential. For the State's Attorney to see that and make their determination, but I did not tell him that it would be reduced, no." Anderson further testified, "I told him after I explained the charges to him that I would express his concerns and speak to the State's Attorney's office about

the possibility, but there was no promises because that was up to the State's Attorney's office."

Thereafter, the defendant made statements as to his involvement, although he continued to deny he committed the actual robbery.

The defendant testified at the suppression hearing that Anderson told him he better cooperate or he was "looking at some time." He testified Anderson told him it was in his best interest to talk and that the charges could be "dropped down." Anderson also indicated he had spoken with the State's Attorney and "everything was go." The defendant denied ever admitting involvement in the armed robbery.

At the conclusion of testimony, the trial court stated there was no need for argument and denied the motion to suppress.

On appeal, the defendant states he does not challenge the trial court's determination as to credibility. However, he maintains that Anderson's own testimony, in light of the other circumstances surrounding the statements, shows the statements were made involuntarily.

■ In determining whether a statement was voluntarily made, the court must ascertain whether the defendant's will was overborne at the time he made the statement, or whether the statement was made freely and voluntarily without compulsion of any sort. (*People v. Shaw* (1989), 180 Ill. App. 3d 1091, 536 N.E.2d 849.) The totality of the circumstances surrounding the making of the statement must be considered in arriving at this determination. (*People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228.) These circumstances include such factors as whether the *Miranda* warnings were given, the presence of threats or physical coercion, whether the defendant was promised leniency, the length and intensity of the interrogation and the age, experience and physical condition of the defendant. (*People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483.) A confession must be proved voluntary by a preponderance of the evidence, and the trial court's finding on the issue of voluntariness will not be reversed unless it is against the manifest weight of the evidence. *People v. Veal* (1986), 149 Ill. App. 3d 619, 500 N.E.2d 1014.

■ Here, we find Anderson's comments to the defendant did not constitute promises of leniency. The evidence shows Anderson made no promises to the defendant of sufficient significance to render the statements involuntary. According to Anderson, he made clear to the defendant he could not promise anything and that all decisions, *vis-a-vis* charges, were up to the State's Attorney.

At the time, the defendant was 18 years of age, of average intelligence and was familiar with the criminal justice system. He under-

stood his rights and immediately expressed his desire to speak with his attorney. Understanding this right, he could knowingly and voluntarily choose to continue talking to the authorities without the assistance of counsel. Viewing the totality of the circumstances, we find the trial court's determination that the defendant's statements were voluntarily made is not against the manifest weight of the evidence.

The defendant further contends his conviction must be reversed and the cause remanded for a new trial based on the improper remarks of the State's Attorney during closing arguments.

At trial, Ray Tarbill testified that in June of 1991, he was in the Whiteside County jail serving a sentence for DUI and driving while his license of revoked. While sharing a cell, the defendant told Tarbill in detail how he committed the armed robbery.

During closing arguments the State's Attorney stated, "I trust Ray Tarbill. I think his testimony was trustworthy. I think the—as you listened to his testimony you can find that it's his—." Defense counsel objected to the State's Attorney giving his personal opinion about the trustworthiness of a witness. The court sustained the objection and instructed the jury to disregard the prosecutor's opinion. The court admonished the jurors that they were to determine guilt or innocence based on their observations.

Although a prosecutor may express an opinion if it is based on the record (*People v. Johnson* (1987), 119 Ill. 2d 119, 518 N.E.2d 100), he may not state his personal opinion regarding the veracity of a witness or vouch for a witness' credibility. (*People v. Roach* (1991), 213 Ill. App. 3d 119, 571 N.E.2d 515.) Although the prejudicial effect of an improper argument cannot always be erased from the minds of the jurors by an admonishment from the court, the act of promptly sustaining the objection and instructing the jury to disregard such argument has usually been viewed as sufficient to cure any prejudice. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

In the instant case, defense counsel promptly objected to the improper argument and the trial court just as promptly sustained the objection and instructed the jury to disregard the prosecutor's expression of personal opinion. Although the State's Attorney's argument was improper, we find any prejudice was cured by the court's action and therefore no reversible error occurred.

Along with sentencing the defendant to 10 years in prison, the trial court ordered the defendant to pay restitution within two years of his release from the Department of Corrections. On appeal, the defendant argues the order of restitution must be reversed because it

violates the provisions of the restitution statute (730 ILCS 5/5—5—6 (West 1992)).

Specifically, the defendant argues the order violates the statutory provision providing the court shall fix a period of time not in excess of five years within which the payment of restitution is to be made in full. (730 ILCS 5/5—5—6(f) (West 1992).) The defendant contends that even if he were to earn all available good time credit on his sentence he would not be released for five years; therefore, any payments made on his release would be beyond the five-year limit of the statute. In other words, the defendant argues the five-year period commences with the order of restitution.

■ Recently, we rejected this argument in *People v. Chapin* (1992), 233 Ill. App. 3d 28, 597 N.E.2d 1250, finding we did not read section 5—5—6(f) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(f)) as requiring restitution be made within five years of the date of the restitution order. Instead, we interpreted it to mean that payment must be made within a five-year period. Therefore, we find no error in the trial court's order of restitution.

The defendant contends and the State concedes that the cause must be remanded for the purpose of filing an amended mittimus to reflect the exact number of days credited toward the defendant's sentence. However, there is a disagreement as to the number of days to be credited. The mittimus states the defendant is to receive credit for the "actual days served in the Whiteside County Jail."

The defendant was held from April 25, 1991, until his transfer to the Department of Corrections on September 26, 1991; a period of 155 days. The defendant maintains he is entitled to credit for the entire 155-day period. The record shows that on May 3, 1991, the defendant was found in contempt during a hearing on his motion for reduction of bond. The trial court sentenced the defendant to serve 90 days for his contemptuous behavior. The State argues the defendant is not entitled to have this 90 days credited toward his 10-year sentence.

■ We note this issue was not raised before the trial court and was therefore not addressed. In *People v. Brents* (1983), 115 Ill. App. 3d 717, 450 N.E.2d 910, in a factually similar context, we held that trial judges had the discretionary authority to give or deny credit as justice required under the circumstances. These types of decisions are best left to the sound discretion of the trial court. Therefore, we remand the cause for further proceedings to determine the appropriate number of days to be credited and to amend the mittimus accordingly.

For the foregoing reasons, the judgment of the circuit court of Whiteside County as to the defendant's conviction and sentence is affirmed; however, the mittimus is vacated and the cause remanded for further proceedings on the issue of credit due the defendant for time spent in the Whiteside County jail and to amend the mittimus accordingly.

Affirmed; mittimus vacated and the cause remanded.

McCUSKEY, P.J., and BARRY, J., concur.